**JEFFERSON COUNTY,**
**Texas, Appellant**

v.

**Victor STINES, Appellee**

**NO. 09-16-00058-CV**

Court of Appeals of Texas,
Beaumont.

Submitted on June 16, 2016

Opinion Delivered June 22, 2017

---

Bob Wortham, District Attorney, Kathleen M. Kennedy, Assistant District Attorney, Gerald Riedmueller, Assistant District Attorney, Beaumont, TX, for Appellant.

T. Phillip Brent, Lance P. Bradley, Bradley, Steele and Pierce, LLP, Port Arthur, TX, for Appellee.

Before McKeithen, C.J., Kreger and Johnson, JJ.

## OPINION

CHARLES KREGER, Justice

Appellant Jefferson County, Texas appeals from two orders of the trial court denying its plea to the jurisdiction and granting appellee Victor Stines's request for a declaratory judgment and writ of mandamus to compel the County to submit to arbitration. In five issues, the County argues that: (1) Stines failed to plead and prove a valid waiver of the County's immunity from suit; (2) the trial court erred in

concluding that the Uniform Declaratory Judgment Act waives the County's immunity from suit; (3) Chapter 174 of the Texas Local Government Code does not waive the County's immunity from suit; (4) the County did not waive its immunity by entering into or accepting benefits under the parties' collective bargaining agreement; and (5) the trial court erred by finding that Stines timely invoked his right to arbitration under that agreement. The County also challenges Stines's standing to bring suit. For the reasons set forth below, we reverse the trial court's order denying the County's plea to the jurisdiction, vacate the trial court's order granting Stines's request for a declaratory judgment and writ of mandamus, and render judgment granting the County's plea to the jurisdiction and dismissing the cause for lack of jurisdiction.

## I. Background

The Jefferson County Deputy Constables Association (the "Deputy Constables Association"), Jefferson County ("the County"), and the Constables for Precincts 1, 2, 4, 6, 7, and 8 of the County entered into a collective bargaining agreement for the period commencing October 1, 2013, and ending September 30, 2014 (the "Agreement"). The Agreement states that it "is made and entered into" by the parties "in accordance with all applicable state and federal statutes, including the Fire and Police Employee Relations Act of Texas [ ("FPERA") ] (Chapter 174 of the Texas Local Government Code)." The Agreement further provides that its "general purpose" is:

> to promote the mutual interests of the County and the deputy constables; to provide for equitable and peaceful adjustments of differences that may arise; to establish proper standards of wages, hours and other terms and conditions of employment for "policemen" as defined

in the Fire and Police Employee Relations Act of Texas, with the objective of providing a sound basis for the efficient and effective delivery of services to the public.

Article 25 of the Agreement governs disciplinary actions taken by the Constable against deputy constables. Article 25 provides:

### ARTICLE 25

### Disciplinary Actions

#### SECTION I

The purpose of this Article is to establish a procedure for the fair, expeditious and orderly adjustment of disciplinary actions taken by the Constable.

#### SECTION II

Upon notification of a complaint filed by any person, or initiated by the Constable due to job performance, the Constable shall thoroughly investigate within a reasonable period of time consistent with the nature of the complaint being investigated.

#### SECTION III

Upon completion of any investigation, the Constable shall determine the disciplinary action to be taken against the affected deputy. The decision of the Constable shall be based upon whether or not just cause exists for the discipline. For the purposes of this Section, the term "just cause" means that the disciplinary action of the Constable's Office was reasonable in light of all circumstances; or was done for good and sufficient reasons.

#### SECTION IV

Within two (2) weeks of the Constable's decision to discipline a Deputy, the Deputy may invoke his right to binding arbitration pursuant to the rules of the American Arbitration Association.

The Agreement defines "discipline" to mean "a suspension without pay or termination."

In September 2015, Stines, a former deputy constable in the office of the Constable for Jefferson County Precinct 1, filed suit against the County, alleging that he had been "subjected to a hostile work environment while employed by [the County.]" Specifically, Stines alleged that in June 2014, during his employment as a deputy constable for the County, the chief deputy constable of his precinct made threats against him, causing Stines to have concerns about his safety at work. According to the petition, Stines filed what was supposed to be an anonymous complaint about the chief deputy constable's actions; however, the complaint was not kept anonymous, and over the next several months, Stines was "targeted" by both the County and the constable of his precinct and was subjected "to unjust employment practices and wrongful accusations." Stines alleged that he was ultimately suspended with pay in August 2014, and that his employment terminated on September 23, 2014.

Stines's petition alleged that on October 7, 2014, his attorney mailed a written notice of appeal to the constable, invoking Stines's right under Article 25 of the Agreement to binding arbitration of the constable's decision to terminate his employment. Stines claimed that his attorney also attempted to fax a copy of the notice of appeal to the constable on the same date, but that "due to unintentional and unforeseeable technological difficulties," the fax could not be transmitted. Stines alleged, however, that the notice was ultimately transmitted by fax on October 8, 2014. Stines alleged that despite his compliance with the notice requirements of Article 25, the County refused to proceed to arbitration, claiming that Stines had failed to timely invoke his right to arbitration under the Agreement.

Based on these alleged facts, Stines asserted a claim against the County under the Uniform Declaratory Judgment Act ("DJA"), seeking a declaration of his "right to compel [the County] to participate in binding arbitration of his wrongful discharge from [the County] in accordance with the Agreement." He also sought a writ of mandamus requiring the County "to participate in binding arbitration of his wrongful discharge from [the County] in accordance with the Agreement." Further, Stines alleged that he was entitled to an award of "actual damages" of "over $100,000 but not more than $200,000[,]" as well as an award of reasonable and necessary attorney's fees under section 37.009 of the DJA.

The County filed an answer and a first amended answer, asserting various defenses and affirmative defenses. The County also filed a plea to the jurisdiction in response to Stines's claims. In its plea to the jurisdiction, the County argued that it is protected from suit under the doctrine of governmental immunity and that Stines's claims do not fall within any waiver of that immunity. The County also argued that deputy constables are not "police officers" under FPERA, that deputy constables are therefore not statutorily authorized to collectively bargain with the County, and that the Agreement is void and unenforceable. The County attached no evidence to its plea to the jurisdiction.

Stines filed a response to the County's plea to the jurisdiction. In his response, Stines argued that the County's immunity from suit had been waived: (1) by legislative consent in sections 174.008, 174.251, and 174.252 of the Texas Local Government Code; (2) by the County's act of entering into the Agreement, which expressly states that it is made and entered

into "in accordance with ... the Fire and Police Employee Relations Act of Texas (Chapter 174 of the Texas Local Government Code)"; and (3) by the County's acceptance of Stines's services under the Agreement. Further, construing the County's argument regarding the validity of the Agreement as a challenge to his standing to bring suit, Stines argued that he had standing to enforce the terms of the Agreement against the County because deputy constables qualify as "police officers" under Chapter 174 of the Texas Local Government Code and are therefore statutorily authorized to collectively bargain under that statute. Stines attached a copy of the Agreement to his response in support of his jurisdictional arguments.

Following a non-evidentiary hearing, the trial court denied the County's plea to the jurisdiction. The trial court issued two letters to counsel explaining the basis for its decision. In the first letter, dated January 20, 2016, the trial court addressed the County's assertion of governmental immunity to suit. In that letter, the trial court stated, in relevant part (footnotes and citations omitted):

> Here, the plaintiff seeks a Court Order enforcing the arbitration provision contained in the Collective Bargaining Agreement. Implicit in that request would be a declaration that deputy constables qualify for inclusion in Chapter 174 of the Local Government Code, which is a legislative waiver itself.

> Texas courts have recognized that a declaratory judgment action can, in fact, be used to clarify the applicability of [a] specific statute.

In [*Texas Education Agency v.*] *Leeper*, the Texas Supreme Court concluded that the legislature, by enacting Chapter 37 of the Tex. Civ. Prac. Rem. Code (which specifically empowers courts to construe statutes and requires the joinder of adverse parties) waived governmental immunity for those purposes where the adverse party is a governmental entity (including attorney's fees).

The fact that plaintiff, likewise, pleads for recovery of damages does not mandate dismissal of a proper declaratory judgment action.

The plaintiff, in this matter, also seeks injunctive relief to require the County to arbitrate. Chapter 37 Tex. Civ. Prac. Rem. Code, likewise, authorizes a Court to grant "further relief" when necessary and the two requests can be combined.

Accordingly, this Court will construe the plaintiff's petition as (a) seeking a declaratory judgment as to the applicability of Chapter 174 to deputy constables, (b) seeking injunctive relief as necessary and proper and (c) requesting an award of attorney's fees.

To that extent, the defendant's Plea to the Jurisdiction is denied. In the second letter, dated February 5, 2016, the trial court concluded that Stines had standing to pursue his claims against the County because deputy constables are "police officers" under Chapter 174 of the Texas Local Government Code and are therefore authorized to collectively bargain with their employer.[1]

On February 5, 2016, the trial court entered a written order denying the County's plea to the jurisdiction. The trial court's order states:

---

1. In the second letter, the trial court also raised the issue of whether the County was estopped from asserting its immunity from suit by contractually agreeing to be bound by the waiver of immunity contained in Chapter 174 of the Texas Local Government Code. However, the trial court's letter ruling does not clearly indicate that the trial court reached a conclusion with respect to that issue.

ON THIS DAY came on to be considered the Plea to the Jurisdiction of Defendant, Jefferson County, Texas and the Court, having considered the pleadings and arguments of counsel is of the opinion that said Plea should in all things [be] DENIED. The Court construes the Original Petition of Plaintiff, Victor Stines, as (1) seeking a declaratory judgment as to the applicability of Chapter 174 of the Texas Civil Practice and Remedies Code to deputy constables, (2) seeking injunctive relief as necessary and proper, and (3) requesting an award of attorney's fees.

It is, therefore, ORDERED, ADJUDGED and DECREED that the Plea to the Jurisdiction of Defendant, Jefferson County, Texas is hereby DENIED.[2]

■ On February 5, 2016, the trial court also entered a second written order granting Stines's request for a declaratory judgment and request for writ of mandamus.

The second order contains findings of fact and conclusions of law relating to the merits of Stines's claims, and it orders the parties "to participate in binding arbitration as required by the Agreement to determine all issues related to the discipline of [Stines] by [the County]." Thereafter, the County appealed, challenging both the trial court's order denying the County's plea to the jurisdiction and the trial court's order granting Stines's request for a declaratory judgment and request for writ of mandamus.[3]

## II. Effect of the Trial Court's Letter Rulings

■ As a preliminary matter, we must determine the effect, if any, of the trial court's letter rulings. Both parties have treated the letter rulings as providing the bases of the trial court's order denying the County's plea to the jurisdiction. This treatment of the letter rulings is not unreasonable given that the language in the

2. Although the trial court's order denying the County's plea to the jurisdiction refers to "Chapter 174 of the Texas Civil Practice and Remedies Code[,]" it appears that this is a typographical error and that the trial court intended to refer to Chapter 174 of the Texas Local Government Code. The parties' arguments in the trial court and on appeal are based on Chapter 174 of the Texas Local Government Code. Further, the Texas Civil Practice and Remedies Code, as it is currently enacted, does not contain a chapter 174.

3. Although this Court has jurisdiction to review the trial court's interlocutory order denying the County's plea to the jurisdiction, *see* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2016), we question whether we have jurisdiction to review the trial court's order granting Stines's requests for a declaratory judgment and writ of mandamus. "Unless specifically authorized by statute, Texas appellate courts only have jurisdiction to review final judgments." *Bison Bldg. Materials, Ltd. v. Aldridge*, 422 S.W.3d 582, 585 (Tex. 2012). The trial court's order granting Stines's requests for a declaratory

judgment and writ of mandamus is not a final judgment or order because the trial court did not hold a conventional trial on the merits and the order does not: (1) dispose of Stines's claim against the County for attorney's fees under the DJA; or (2) contain language that states with unmistakable clarity that it is a final judgment as to all claims and all parties. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001); *see also Farm Bureau Cty. Mut. Ins. Co. v. Rogers*, 455 S.W.3d 161, 163 (Tex. 2015) (per curiam); *McNally v. Guevara*, 52 S.W.3d 195, 196 (Tex. 2001) (per curiam). The County has not identified any statute permitting an interlocutory appeal from the trial court's order granting Stines's requests for a declaratory judgment and writ of mandamus. However, because we conclude that the County's governmental immunity from suit deprived the trial court of subject matter jurisdiction over Stines's claims, the trial court's order granting Stines's requests for a declaratory judgment and writ of mandamus is void, and we must vacate that order. *See Houston Pipeline Co. v. Bank of Am., N.A.*, 213 S.W.3d 418, 429 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

trial court's order denying the County's plea appears to be taken, almost verbatim, from the trial court's January 20, 2016, letter ruling and the grounds stated in both letter rulings are consistent with the trial court's denial of the County's plea to the jurisdiction. However, we note that there is some authority holding that, in certain circumstances, a trial court's prejudgment letter is not competent evidence of the basis for its judgment. *See Cherokee Water Co. v. Gregg Cty. Appraisal Dist.*, 801 S.W.2d 872 (Tex. 1990).

In *Cherokee Water Co.*, the trial court sent counsel a prejudgment letter stating that it had considered certain evidence in making its ruling. *Id.* at 878. However, nothing in the formal findings of fact, filed after the judgment was signed, indicated that the trial court had considered the evidence referenced in the prejudgment letter for any purpose. *Id.* On appeal, Cherokee Water argued that the prejudgment letter was a finding of fact and that the trial court had improperly considered the evidence referred to in the prejudgment letter in making its ruling. *Id.* at 877–78. The Texas Supreme Court, however, noted that the formal findings of fact and conclusions of law did not state whether the trial court considered the evidence referenced in the prejudgment letter and that there was other evidence that supported the trial court's decision. *Id.* at 878. Therefore, the Court explained, the trial court "could have disregarded the evidence [referred to in the prejudgment letter] at the time the judgment was actually signed." *Id.* Accordingly, the Court concluded that the prejudgment letter was not a finding of fact and was "not competent evidence of the trial court's basis for judgment." *Id.*

Unlike the trial court in *Cherokee Water Co.*, the trial court in the present case did not enter formal findings of fact and conclusions of law specifically relating to its ruling on the County's plea to the jurisdiction. Therefore, this case is factually distinguishable from *Cherokee Water Co. See In re Estate of Miller*, 446 S.W.3d 445, 451–52 (Tex. App.—Tyler 2014, no pet.) (concluding that the trial court's failure to file formal findings of fact and conclusions of law was a factor distinguishing the case from *Cherokee Water Co.*); *Kendrick v. Garcia*, 171 S.W.3d 698, 702 (Tex. App.—Eastland 2005, pet. denied) (distinguishing *Cherokee Water Co.*, in part, on the basis that the trial court in the case before it did not enter formal findings of fact and conclusions of law). Further, as noted, the language in the trial court's order denying the County's plea to the jurisdiction appears to be taken, almost word for word, from the trial court's January 20, 2016 letter ruling, and the January 20, 2016 letter ruling provides an extensive explanation for that language. In reviewing the record, we do not see any other applicable legal theories—other than those stated in the trial court's January 20, 2016 letter ruling—that would support the specific statements contained in the trial court's order denying the County's plea. *See Long Term Care Pharm. All. v. Tex. Health & Human Servs. Comm'n*, 249 S.W.3d 471, 476–77 (Tex. App.—Eastland 2007, no pet.) (concluding that it was appropriate to consider the trial court's letter ruling as evidence of the basis of the trial court's ruling where both parties treated the trial court's ruling as having been based on the grounds stated in the letter and, after reviewing the record, the appellate court did "not see any other applicable theory that would support the trial court's ruling"). Additionally, the trial court's February 5, 2016 letter ruling sets forth the trial court's reasoning with respect to the remaining jurisdictional issue raised by the parties but not addressed in the January 20, 2016 letter—namely, Stines's standing

to bring suit—and the trial court's conclusions regarding Stines's standing in that letter are entirely consistent with the trial court's order denying the County's plea to the jurisdiction. Therefore, under the facts of this case, we treat the trial court's letter rulings as competent evidence of the trial court's basis for denying the County's plea to the jurisdiction.

### III. Plea to the Jurisdiction

In issues one through four, the County challenges the trial court's denial of its plea to the jurisdiction. Specifically, the County contends that the trial court should have granted its plea because the County is entitled to governmental immunity with respect to each of Stines's claims and because Stines has failed to plead or prove a valid waiver of that immunity. Additionally, the County argues that the trial court lacked subject matter jurisdiction over Stines's claims because Stines has no standing to assert his claims in this case. We begin with the County's arguments regarding governmental immunity because they are dispositive of the issues in this appeal.

### A. Standard of Review

 "A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction." *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). "Subject matter jurisdiction is essential to the authority of a court to resolve a case." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Because the existence of subject matter jurisdiction is a question of law, we review a trial court's ruling on a plea to the jurisdiction *de novo. Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016).

 In determining whether a trial court has subject matter jurisdiction, our analysis begins with the live pleadings. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012). The pleader has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law reviewed *de novo. Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We construe the pleadings liberally, taking all factual allegations as true, and look to the pleader's intent. *Heckman*, 369 S.W.3d at 150; *Miranda*, 133 S.W.3d at 226. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and we should afford the plaintiff an opportunity to amend. *Id.* at 226–27. If, on the other hand, the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without affording the plaintiff an opportunity to amend. *Id.* at 227.

 In reviewing a plea to the jurisdiction, we may also consider evidence submitted by the parties and must do so when necessary to resolve the jurisdictional issues raised. *Heckman*, 369 S.W.3d at 150; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). "We do not adjudicate the substance of the case but instead determine whether a court has the power to reach the merits of the claim." *Satterfield & Pontikes Constr., Inc. v. Tex. S. Univ.*, 472 S.W.3d 426, 430 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). "Our ultimate inquiry is whether the particular facts presented, as determined by the foregoing review of the pleadings and any evidence, affirmatively demonstrate a claim within the trial court's subject[ ]mat-

ter jurisdiction." *Tex. Dep't of State Health Servs. v. Balquinta,* 429 S.W.3d 726, 738 (Tex. App.—Austin 2014, pet. dism'd).

The County's issues on appeal also involve matters of statutory construction, which is a question of law that we review *de novo. In re Mem'l Hermann Hosp. Sys.,* 464 S.W.3d 686, 700 (Tex. 2015). Our primary "objective in construing a statute is to give effect to the Legislature's intent, which requires us to first look to the statute's plain language." *Lippincott v. Whisenhunt,* 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). If the statute is clear and unambiguous, we must read the language according to its common meaning, unless a different meaning is supplied or is apparent from the context, or the plain meaning would lead to absurd results. *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.,* 430 S.W.3d 384, 389–90 (Tex. 2014). Further, in ascertaining legislative intent, we may consider other matters, "including the objective of the law, its history, and the consequences of a particular construction." *State v. Shumake,* 199 S.W.3d 279, 284 (Tex. 2006) (citing Tex. Gov't Code Ann. § 311.023(1), (3), (5) (West 2013)); *see also* Tex. Gov't Code Ann. § 312.005 (West 2013) ("In interpreting a statute, a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy.").

Proper construction of a statute "requires reading the statute as a whole rather than interpreting provisions in isolation." *In re Mem'l Hermann Hosp. Sys.,* 464 S.W.3d at 701. "[C]ourts should not give an undefined statutory term a meaning out of harmony or inconsistent with other provisions, although it might be susceptible of such a construction if standing alone." *Tex. Dep't of Transp. v. Needham,* 82 S.W.3d 314, 318 (Tex. 2002). Further, we must give effect to all of a statute's words and, if possible, not treat any statutory language as mere surplusage. *Shumake,* 199 S.W.3d at 287. "We presume the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind." *Tex. Lottery Comm'n v. First State Bank of DeQueen,* 325 S.W.3d 628, 635 (Tex. 2010).

## B. Governmental Immunity

Governmental immunity protects political subdivisions of the State, including counties, from lawsuits for money damages, unless such immunity has been waived. *See Reata Constr. Corp. v. City of Dallas,* 197 S.W.3d 371, 374 (Tex. 2006); *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n.3 (Tex. 2003). Governmental immunity encompasses two distinct principles: immunity from liability and immunity from suit. *Lubbock Cty. Water Control & Imp. Dist. v. Church & Akin, L.L.C.,* 442 S.W.3d 297, 300 (Tex. 2014). Immunity from liability bars enforcement of a judgment against a governmental entity and is an affirmative defense. *Brown & Gay Eng'g, Inc. v. Olivares,* 461 S.W.3d 117, 121 (Tex. 2015). Immunity from suit, on the other hand, bars suit against the governmental entity altogether because it deprives a court of subject matter jurisdiction. *Church & Akin,* 442 S.W.3d at 300.

A governmental entity that enters into a contract waives its immunity from liability, voluntarily binding itself like any other party to the terms of the agreement, but it does not waive its immunity from suit. *Id.* Governmental entities retain immunity from suit unless it has been waived. *City of Houston v. Williams,* 353 S.W.3d 128, 134 (Tex. 2011). Texas courts ordinarily defer to the Legislature to waive sovereign immunity from suit because this allows the Legislature to protect

its policy making functions. *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 326 (Tex. 2006). As the Texas Supreme Court has explained, "the Legislature is better suited than the courts to weigh conflicting public policies associated with waiving immunity and subjecting the government to increased liability, the burden of which the public must bear." *Id.* at 327. A legislative waiver of immunity may be in the form of either a statute or a legislative resolution, but in either case the Legislature's intent to waive immunity must be expressed in "clear and unambiguous language." *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001). "If the Legislature has not expressly waived immunity from suit, the State retains such immunity even if its liability is not disputed." *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002).

## C. Waiver of Governmental Immunity

The County argues that the trial court erred in denying its plea to the jurisdiction because governmental immunity bars Stines's claims. In response, Stines contends that the trial court correctly determined that the DJA waives the County's immunity from suit for his claims in this case. Stines also argues that the County's immunity from suit was waived by: (1) legislative consent in sections 174.008, 174.251, and 174.252 of the Texas Local Government Code; (2) the County's act of entering into a contract that expressly states that it "is made and entered into" in accordance with Chapter 174 of the Texas Local Government Code, which, in turn, contains an express statutory waiver of immunity; and (3) the County's act of accepting benefits under the Agreement. We address each of these arguments in turn.

### 1. Waiver by the Uniform Declaratory Judgment Act

In its second issue, the County contends that the trial court erred by concluding that the DJA waives the County's immunity from suit for Stines's claims for declaratory judgment, mandamus relief, and attorney's fees. Specifically, the County argues that the trial court improperly construed Stines's claims as: "(1) seeking a declaratory judgment as to the applicability of Chapter 174 of the [Texas Local Government Code] to deputy constables, (2) seeking injunctive relief as necessary and proper, and (3) requesting an award of attorney's fees." Further, the County asserts that the trial court incorrectly concluded that Stines's claims, as construed by the trial court, fall within the DJA's limited waiver of immunity. The County contends that Stines's claims, in actuality, seek nothing more than to enforce the County's performance under the Agreement. Accordingly, the County asserts that Stines's claims implicate the County's governmental immunity and that the DJA does not waive its immunity for such claims. Stines responds that the trial court correctly determined that the DJA waives the County's immunity from suit for his claims in this case.

The DJA is a remedial statute designed "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (West 2015). The DJA provides:

A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute,

ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder. .

Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 2015). Although the DJA waives immunity for certain claims, it is not a general waiver of immunity. *Tex. Parks & Wildlife Dep't v. Sawyer Trust,* 354 S.W.3d 384, 388 (Tex. 2011). Instead, it is a procedural device for deciding cases that are already within a court's jurisdiction. *Id.* Further, the fact that a litigant couches its requested relief in terms of a declaratory judgment does not alter the underlying nature of the suit. *Id.* Consequently, governmental immunity will bar an otherwise proper DJA claim that has the effect of establishing a right to relief against a governmental entity for which the Legislature has not waived immunity. *Id.*

It is well-established, however, that certain types of claims brought under the DJA do not implicate governmental immunity. For example, governmental immunity does not apply to suits for declaratory, injunctive, or mandamus relief against a state official to compel compliance with statutory or constitutional provisions. *City of El Paso v. Heinrich,* 284 S.W.3d 366, 368–69, 372, 376–77 (Tex. 2009); *see also Hamilton v. Washington,* No. 03-11-00594-CV, 2014 WL 7458988, at *5 (Tex. App.—Austin Dec. 23, 2014, no pet.) (mem. op.) (concluding that a request for prospective injunctive or mandamus relief from acts that violate a statute or constitutional provision may be pursued against the appropriate state officials in their official capacity under the *ultra vires* exception to governmental immunity). This type of suit, referred to as an *"ultra vires"* action, does not implicate governmental immunity because it does "not attempt to exert control over the state[,]" but instead "attempt[s] to reassert the control of the

state." *Heinrich,* 284 S.W.3d at 372. To fall within the *ultra vires* exception, the suit "must allege that a state official acted without legal authority or failed to perform a purely ministerial act, rather than attack the officer's exercise of discretion." *Patel v. Tex. Dep't of Licensing & Regulation,* 469 S.W.3d 69, 76 (Tex. 2015) (citing *Heinrich,* 284 S.W.3d at 372). Further, the suit must seek prospective relief and must be brought against the state official in his or her official capacity, not against the governmental entity itself. *Heinrich,* 284 S.W.3d at 373. The governmental entity retains its immunity from suit for an *ultra vires* claim because the unlawful acts of officials are not acts of the State. *Patel,* 469 S.W.3d at 76. *Ultra vires* claims that meet these requirements "do not implicate sovereign immunity in the first instance and, thus, are not barred even absent legislative consent." *Tex. Educ. Agency v. Am. YouthWorks, Inc.,* 496 S.W.3d 244, 256 (Tex. App.—Austin 2016, pet. filed).

On the other hand, governmental immunity applies to and protects political subdivisions of the State against suits that attempt to control state action. *Satterfield & Pontikes Constr., Inc.,* 472 S.W.3d at 431; *see also Houston Belt & Terminal Ry. Co.,* 487 S.W.3d at 163–64 ("Governmental immunity is premised in part on preventing suits that attempt to control state action by imposing liability on the state."); *Multi-Cty. Water Supply Corp. v. City of Hamilton,* 321 S.W.3d 905, 908 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (noting that governmental immunity "'protects a governmental unit from lawsuits that seek to control the unit's lawful actions by a final judgment made by a court of law'") (quoting *City of Houston v. Houston Firefighters' Relief & Ret. Fund,* 196 S.W.3d 271, 277 (Tex. App.—Houston [1st Dist.] 2006, no pet.)). Claims, including those for declara-

tory judgment, that seek to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are claims that attempt to control state action by imposing liability on the State. *Satterfield & Pontikes Constr., Inc.*, 472 S.W.3d at 431; *see also IT-Davy*, 74 S.W.3d at 855–56; *Multi-Cty. Water Supply Corp.*, 321 S.W.3d at 908. Accordingly, such claims are barred by governmental immunity and cannot be maintained absent a statutory waiver of immunity or legislative consent to suit. *IT-Davy*, 74 S.W.3d at 856; *Pharmserv, Inc. v. Tex. Health & Human Servs. Comm'n*, No. 03-13-00526-CV, 2015 WL 1612006, at *9 (Tex. App.—Austin Apr. 9, 2015, no pet.) (mem. op.).

■ Section 37.006(b) of the DJA contains a limited waiver of governmental immunity, but it is limited to claims against governmental entities that challenge the validity of an ordinance or statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b) (West 2015); *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011); *Heinrich*, 284 S.W.3d at 373 n.6. The Texas Supreme Court has recognized this waiver of immunity because the DJA requires a claimant to make the relevant governmental entity a party to a declaratory judgment suit that challenges the validity of an ordinance or statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b) ("In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be

served with a copy of the proceeding and is entitled to be heard."); *Heinrich*, 284 S.W.3d at 373 n.6 ("For claims challenging the validity of ordinances or statutes, ... the [DJA] requires that the relevant governmental entities be made parties, and thereby waives immunity.").

### a. Claim for declaratory judgment

■ The trial court construed Stines's claim for declaratory judgment as seeking a declaration "as to the applicability of Chapter 174 of the [Texas Local Government Code] to deputy constables." Based on this interpretation, the trial court concluded that Stines's declaratory judgment claim falls within the limited waiver of immunity contained in section 37.006(b) of the DJA.[4] We disagree with the trial court's interpretation of Stines's claim for declaratory relief, as well as its conclusion that the DJA waives the County's immunity from suit for that claim.

Section VI of Stines's petition requests the following declaration:

> In light of [the County's] failure to adhere to the terms of the Agreement, [Stines] seeks a declaratory judgment pursuant to the Uniform Declaratory Judgment Acts, Chapter 37, Texas Civil Practice & Remedies Code, declaring [Stines's] right to compel [the County] to participate in binding arbitration of his wrongful discharge from [the County] in accordance with the Agreement.

The introductory paragraph of the petition describes this claim as "seeking the construction of a Collective Bargaining Agreement." Further, the petition's prayer for relief describes the declaratory relief re-

---

4. In its January 20, 2016 letter ruling, the trial court relied on *Texas Education Agency v. Leeper*, 893 S.W.2d 432 (Tex. 1994), to conclude that the DJA waives the County's immunity from suit for Stines's declaratory judgment claim. In *Leeper*, the Texas Supreme

Court held that section 37.006(b) of the DJA waives a governmental entity's immunity from suit for declaratory judgment claims challenging the validity of an ordinance or statute or seeking construction of a legislative pronouncement. 893 S.W.2d at 446.

quested as a declaration "that the Agreement requires [the County] to participate in binding arbitration of [Stines's] wrongful discharge claims against [the County]." Stines's petition contains no reference to Chapter 174 of the Texas Local Government Code or any specific provision thereunder. Even construing Stines's pleadings liberally in his favor, we conclude that his claim for a declaratory judgment does not seek a declaration concerning the applicability of Chapter 174 of the Texas Local Government Code to deputy constables, as the trial court concluded. Instead, it seeks a declaration of the parties' contractual rights and obligations under the Agreement for the purpose of enforcing the County's performance under the Agreement. *See Town of Highland Park v. Iron Crow Constr., Inc.*, 168 S.W.3d 313, 317 (Tex. App.—Dallas 2005, no pet.) (concluding that a declaratory judgment action against a town to compel arbitration pursuant to a contractual arbitration clause was a suit seeking to enforce the town's performance under a contract and, thus, implicated the town's governmental immunity). Because a claim against a governmental entity to enforce performance under a contract effectively seeks to control state action, it is barred by governmental immunity absent a statutory waiver of immunity or legislative consent to suit. *See IT-Davy*, 74 S.W.3d at 856; *Mustang Special Util. Dist. v. Providence Village*, 392 S.W.3d 311, 316 (Tex. App.—Fort Worth 2012, no pet.); *Multi-Cty. Water Supply Corp.*, 321 S.W.3d at 908; *Town of Highland Park*, 168 S.W.3d at 317.

 Here, the trial court concluded that section 37.006(b) of the DJA waived the County's immunity from suit for Stines's declaratory judgment claim. However, as noted, the waiver of immunity contained in section 37.006(b) applies only to claims challenging the validity of a statute or ordinance. *Sefzik*, 355 S.W.3d at

622; *Heinrich*, 284 S.W.3d at 373 n.6; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b). It does not apply to claims, such as those alleged by Stines, to construe or enforce performance under a contract. Accordingly, Stines did not plead facts sufficient to demonstrate that his declaratory judgment claim falls within the DJA's limited waiver of immunity. We therefore conclude that the trial court erred in ruling that the DJA waives the County's immunity from suit for Stines's declaratory judgment claim in this case.

 Further, even if we were to conclude that the trial court correctly construed Stines's declaratory judgment claim as seeking a declaratory judgment as to the applicability of Chapter 174 of the Texas Local Government Code to deputy constables, it would not affect our conclusion that the DJA does not waive the County's immunity from suit for that claim. The waiver of immunity contained in section 37.006(b) of the DJA applies only to claims challenging the validity of a statute or ordinance. *Sefzik*, 355 S.W.3d at 622; *Heinrich*, 284 S.W.3d at 373 n.6. The DJA "does not waive the state's sovereign immunity when the plaintiff seeks a declaration of his or her rights under a statute or other law." *Sefzik*, 355 S.W.3d at 621; *see also Tex. Transp. Comm'n v. City of Jersey Village*, 478 S.W.3d 869, 885 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (concluding that *Sefzik* abrogated *sub silentio* the Texas Supreme Court's holding in *Leeper* that section 37.006(b) of the DJA waives a governmental entity's immunity from suit for claims seeking a declaration of the parties' rights under a statute or other law). A declaratory judgment claim seeking a declaration regarding the applicability of Chapter 174 to deputy constables does not challenge the validity of Chapter 174 or any other statute. Instead, it seeks a declaration of

Stines's rights, if any, under Chapter 174. Accordingly, we conclude that the DJA's limited waiver of immunity does not apply to Stines's declaratory judgment claim, even if the trial court properly construed that claim as seeking a declaration regarding the applicability of Chapter 174 to deputy constables. *See Sefzik*, 355 S.W.3d at 621.

### b. Claim for mandamus relief

■ The trial court also concluded that the DJA waives the County's immunity from suit with respect to Stines's claim for mandamus relief. Specifically, the trial court construed Stines's mandamus claim as a request for ancillary relief under section 37.011 of the DJA. The trial court then concluded that because such a claim can be combined with Stines's declaratory judgment claim, and because his declaratory judgment claim falls within the waiver of immunity contained in section 37.006(b) of the DJA, section 37.006(b) also waives the County's immunity from suit for Stines's mandamus claim. Again, we disagree with the trial court.

■ Stines's petition seeks a writ of mandamus "requiring [the County] to participate in binding arbitration of his wrongful discharge from [the County] in accordance with the Agreement." By its plain language, Stines's mandamus claim seeks to compel the County to perform its alleged contractual obligations under the Agreement and, thus, seeks to control state action. *See IT-Davy*, 74 S.W.3d at 855–56; *Town of Highland Park*, 168 S.W.3d at 317. It is therefore barred by governmental immunity absent a statutory waiver of immunity or legislative consent to suit. *See, e.g., Tex. Music Library & Research Ctr. v. Tex. Dep't of Transp.*, No. 13-13-00600-CV, 2014 WL 3802992, at *17 (Tex. App.—Corpus Christi July 31, 2014, pet. denied) (mem. op.) (concluding that

governmental immunity barred claim for mandamus relief because, *inter alia*, the essence of the plaintiff's suit was "an attempt to control state action by seeking to establish the existence and validity of a contract . . . , enforce performance thereunder, and thereby impose liability on the state"); *Hinojosa v. Tarrant Cty.*, 355 S.W.3d 812, 816 (Tex. App.—Amarillo 2011, no pet.) (explaining that absent a waiver, governmental immunity bars claims for mandamus relief that seek "to control state action by imposing liability on the State"); *see also IT-Davy*, 74 S.W.3d at 855–56.

At least one court of appeals has concluded that the DJA waives a governmental entity's immunity from suit for a claim for ancillary injunctive relief under section 37.011 of the DJA when it is combined with a claim for a declaratory judgment for which the DJA waives immunity. *See Hays Cty. v. Hays Cty. Water Planning P'ship*, 106 S.W.3d 349, 359 (Tex. App.—Austin 2003, no pet.). However, even assuming that this is a correct statement of the law and that the trial court properly construed Stines's mandamus claim as seeking ancillary relief under section 37.011—questions we need not decide here—we conclude that this theory of waiver does not apply so as to waive the County's immunity for Stines's mandamus claim because, as we have already concluded, Stines's claim for declaratory judgment does not fall within the DJA's limited waiver of immunity in section 37.006(b). Further, Stines's mandamus claim does not itself fall within section 37.006(b)'s waiver of immunity because it is not a claim for a declaratory judgment that challenges the validity of a statute or ordinance. *See Sefzik*, 355 S.W.3d at 622; *Heinrich*, 284 S.W.3d at 373 n.6; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b). We therefore conclude that the trial court erred by

concluding that the DJA waives the County's immunity from suit for Stines's claim for mandamus relief.

### c. Claim for Attorney's Fees

■ Stines's petition also alleges a claim against the County for attorney's fees under section 37.009 of the DJA.[5] The trial court determined that this claim is not barred by governmental immunity because Stines asserted it in connection with a declaratory judgment claim that falls within the waiver of immunity contained in section 37.006(b) of the DJA. In *Texas Education Agency v. Leeper*, the Texas Supreme Court concluded that the DJA waives a governmental entity's immunity from suit for a claim for attorney's fees

under section 37.009 of the DJA when it is asserted in connection with a claim for declaratory judgment that falls within the waiver of immunity contained in section 37.006(b) of the DJA. 893 S.W.2d 432, 446 (Tex. 1994). However, as we have already explained, Stines's claim for declaratory relief does not fall within section 37.006(b)'s limited waiver of immunity because it does not challenge the validity of an ordinance or statute. *See Sefzik*, 355 S.W.3d at 622; *Heinrich*, 284 S.W.3d at 373 n.6; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b). Therefore, we conclude that the trial court erred by concluding that the DJA waives the County's governmental immunity from suit for Stines's claim for attorney's fees.[6]

5. On appeal, Stines argues that his claim for attorney's fees has been brought under section 174.252 of the Texas Local Government Code. However, Stines's petition expressly states that he is seeking "to recover reasonable and necessary attorney's fees that are equitable and just under Texas Civil Practice & Remedies Code section 37.009 because this is a suit for declaratory relief." Stines's petition contains no reference to section 174.252. Even construing Stines's pleadings liberally, we conclude that Stines's petition alleges a claim for attorney's fees under section 37.009 of the DJA, not section 174.252 of the Local Government Code.

6. In addition to his claims for declaratory judgment, mandamus relief, and attorney's fees, Stines's pleadings also seek an award of "actual damages" against the County. However, the trial court's order denying the County's plea to the jurisdiction does not expressly address this claim. Instead, it construes Stines's petition as asserting claims for a declaratory judgment, injunctive relief, and attorney's fees and then states that the plea is denied. However, by construing Stines's petition as asserting only certain types of claims and then stating, based on those claims, that the plea is denied, it appears that the trial court ruled that it only had jurisdiction over the claims identified in the order and, thus, that it did not have jurisdiction over Stines's damages claim. Nevertheless, to the extent the absence of language in the order expressly

dismissing Stines's damages claim can reasonably be construed as a ruling by the trial court that it had jurisdiction over that claim, we disagree with that ruling. Stines's petition does not clearly allege the factual or legal basis for his damages claim. The only references to that claim in his pleadings are in section III of the petition, which states that Stines "seeks monetary relief of over $100,000, but not more than $200,000," and in the petition's prayer for relief, which states that Stines is seeking an award of "actual damages" from the trial court. On appeal, Stines does not dispute that his damages claim implicates the County's governmental immunity. Instead, he asserts on appeal that the trial court has subject matter jurisdiction over his damages claim because it seeks "back pay" or "lost wages" under section 174.252 of the Texas Local Government Code and section 174.252 waives the County's immunity for such a claim. However, Stines's petition contains no reference to section 174.252. It also does not allege any of the statutory elements required for a claim under section 174.252. *See* Tex. Loc. Gov't Code Ann. § 174.252 (West 2016). Therefore, even construing Stines's petition liberally in his favor, we conclude that it does not allege a claim for back pay under section 174.252. Moreover, even if his petition did allege such a claim, we conclude, as discussed in more detail below, that Chapter 174 does not apply to deputy constables and, thus, does not waive

In summary, Stines has not pleaded facts sufficient to show that the DJA waives the County's immunity from suit for the claims asserted in this case. *See Miranda*, 133 S.W.3d at 227. We therefore conclude that the trial court erred by denying the County's plea to the jurisdiction on the basis that the DJA waived the County's immunity from suit. We sustain issue two.

**2. Waiver by Chapter 174 of the Local Government Code**

In his response to the County's plea to the jurisdiction, Stines argued that Chapter 174 of the Texas Local Government Code, titled the Fire and Police Employee Relations Act ("FPERA"), waives the County's immunity from suit for his claims for declaratory judgment, mandamus relief, damages, and attorney's fees in this case. *See* Tex. Loc. Gov't Code Ann. §§ 174.001–.253 (West 2016). Specifically, Stines contends that sections 174.008, 174.251, and 174.252 of the FPERA constitute express statutory waivers of immunity from suit, and that because his claims fall within these statutory waivers, governmental immunity does not bar his suit against the County. The County challenges this ground as part of its third issue on appeal, asserting that the FPERA does not apply to deputy constables and does

not waive the County's immunity from suit in this case.[7]

As a general rule, "Texas law prohibits a state political subdivision from collective bargaining with public employees." *Dallas Area Rapid Transit v. Amalgamated Transit Union Local No. 1338*, 273 S.W.3d 659, 661 (Tex. 2008). Specifically, section 617.002 of the Texas Government Code states that "[a]n official of the state or of a political subdivision of the state may not enter into a collective bargaining contract with a labor organization regarding wages, hours, or conditions of employment of public employees." Tex. Gov't Code Ann. § 617.002(a) (West 2012). A contract that is entered into in violation of section 617.002(a) is void and unenforceable. *Id.* § 617.002(b).

▇▇ The FPERA, however, creates a limited exception to this general rule. *See City of San Antonio v. San Antonio Park Rangers Ass'n*, 850 S.W.2d 189, 190 (Tex. App.—San Antonio 1992, writ denied). The FPERA specifically permits "fire fighters, police officers, or both ... to organize and bargain collectively with their public employer regarding compensation, hours, and other conditions of employment" upon the adoption of the FPERA by a political subdivision to which the FPERA applies.[8]

immunity for Stines's claims in this case. We therefore conclude that Stines has failed to allege facts that affirmatively demonstrate the trial court's jurisdiction over his damages claim against the County. *See Miranda*, 133 S.W.3d at 227.

7. The trial court did not specifically rule on whether sections 174.008, 174.251, and 174.252 of the FPERA waive the County's immunity from suit in this case. However, we must affirm the trial court's order denying the County's plea to the jurisdiction if it can be upheld on any legal theory that was properly before the trial court. *See Guar. Cty. Mut. Ins. Co. v. Reyna*, 709 S.W.2d 647, 648 (Tex. 1986); *Carroll Indep. Sch. Dist. v. Nw. Indep.*

*Sch. Dist.*, 245 S.W.3d 620, 625 n.19 (Tex. App.—Fort Worth 2008, pet. denied). Because the County argued in its plea to the jurisdiction that section 174.008 does not apply to Stines's claims in this case, and because Stines argued in his response to the County's plea that sections 174.008, 174.251, and 174.252 operate to waive the County's immunity from suit for his claims, we will consider this ground in this appeal.

8. Counties are political subdivisions to which the FPERA applies. *Comm'rs Court of El Paso Cty. v. El Paso Cty. Sheriff's Deputies Ass'n*, 620 S.W.2d 900, 901–02 (Tex. Civ. App.—El Paso 1981, writ ref'd n.r.e.). There is no contention on appeal that the FPERA has not

Tex. Loc. Gov't Code Ann. § 174.023. Once a political subdivision adopts the FPERA, a majority of firefighters of the fire department of the political subdivision, or a majority of police officers of the police department of the political subdivision, may select an association to function as its exclusive bargaining agent. *Id.* §§ 174.101, 174.102. If the firefighters or police officers of a political subdivision are represented by such an association, the public employer and the association "shall bargain collectively[,]" and the association may enter into a collective bargaining agreement with the public employer on behalf of the firefighters or police officers. *Id.* § 174.105. If a public employer and an association reach a collective bargaining agreement under the FPERA, the agreement "is binding and enforceable against a public employer, an association, and a fire fighter or police officer covered by the agreement." *Id.* § 174.109.

If a public employer and an association reach an impasse in collective bargaining or are unable to settle after the appropriate lawmaking body fails to approve a contract reached through collective bargaining, the public employer or the association may request arbitration to resolve the issues in dispute. *Id.* § 174.153. To the extent both parties agree to arbitrate, an arbitration board selected in accordance with the FPERA shall hold a hearing, make written findings, and render a written arbitration award on the issues presented to the board. *Id.* §§ 174.154, 174.155, 174.158. If a majority decision of an arbitration board is supported by competent, material, and substantial evidence, it is final and binding on the parties and may be enforced in court by either party or by the arbitration board. *Id.* § 174.159. Because the FPERA provides the right to

been adopted by the County's governing body in accordance with the terms of the FPERA.

collectively bargain and to participate in the statute's alternative dispute resolution procedures, the FPERA specifically prohibits strikes and slowdowns by firefighters and police officers, as well as lockouts of firefighters and police officers. *Id.* §§ 174.002, 174.202.

### a. Waiver under sections 174.008 and 174.251

 Stines argues that sections 174.008 and 174.251 of the FPERA expressly waive the County's immunity from suit in this case. Section 174.251 contains the general judicial enforcement provision for the FPERA. *See id.* § 174.251 (entitled "Judicial Enforcement Generally"). Specifically, section 174.251 provides that:

A district court for the judicial district in which a municipality is located, on the application of a party aggrieved by an act or omission of the other party that relates to the rights or duties under this chapter, may issue a restraining order, temporary or permanent injunction, contempt order, or other writ, order, or process appropriate to enforce this chapter.

*Id.* To waive immunity from suit, a statute must contain a clear and unambiguous expression of waiver. *Rolling Plains Groundwater Conservation Dist. v. City of Aspermont*, 353 S.W.3d 756, 759 (Tex. 2011). Section 174.251 of the FPERA does not itself state that it waives sovereign or governmental immunity and does not specifically authorize a suit against a political subdivision or a public employer. *See* Tex. Loc. Gov't Code Ann. § 174.251; *cf. Wichita Falls State Hosp.*, 106 S.W.3d at 697–98 ("[I]f the Legislature requires that the State be joined in a lawsuit for which immunity would otherwise attach, the Leg-

*See* Tex. Loc. Gov't Code Ann. §§ 174.051–.052 (West 2016).

islature has intentionally waived the State's sovereign immunity."). However, section 174.008 of the FPERA provides that "[t]his chapter is binding and enforceable against the employing public employer, and sovereign or governmental immunity from suit and liability is waived only to the extent necessary to enforce this chapter against that employer." Tex. Loc. Gov't Code Ann. § 174.008. Construing sections 174.008 and 174.251 together, we conclude that the FPERA clearly and unambiguously waives immunity from suit for claims (1) brought under section 174.251 (2) to enforce the FPERA (3) against the employing public employer. *See id.* §§ 174.008, 174.251.

For a claim to be brought under section 174.251, it must, among other things, be asserted by "a party aggrieved by an act or omission of the other party that relates to the rights or duties under [the FPERA.]" *Id.* § 174.251. Thus, Stines's claims fall within the waiver of immunity created by sections 174.008 and 174.251 only if they complain about alleged acts or omissions of the County that relate to the rights or duties under the FPERA. *See id.* We therefore examine whether the alleged acts or omissions of the County that form the basis of Stines's claims relate to the rights or duties under the FPERA.

As noted, the FPERA authorizes only firefighters and police officers to organize and bargain collectively with their public employer regarding compensation, hours, and other conditions of employment.[9] *See id.* § 174.023. The FPERA defines the term "police officer" to mean "a paid employee who is sworn, certified, and full-time, and who regularly serves in a professional law enforcement capacity in the police department of a political subdivision." *Id.* § 174.003(3). The County contends that Stines's claims do not relate to the rights

or duties under the FPERA because deputy constables are not "police officers" under the FPERA. Specifically, the County argues that deputy constables do not satisfy the definition of "police officer" under section 174.003(3) because they do not serve in "the police department" of a county. The County contends that "the police department" of a county has been held by Texas courts to be the sheriff's office and that because deputy constables serve in the constable's office, and not in the sheriff's office, they do not satisfy the definition of "police officer" under the statute. Stines responds that "the police department" of a county is not limited to the sheriff's office and that because a constable's office is similar to a sheriff's office in several respects, a constable's office should also be considered a "police department" of a county for purposes of the FPERA. Both parties also argue that the legislative intent behind the enactment of the FPERA, as stated in section 174.002 of the statute, supports their respective interpretations of section 174.003(3).

Several Texas courts have determined that the sheriff's office is "the police department" of a county for purposes of the FPERA. For example, in *Commissioners' Court of El Paso County v. El Paso County Sheriff's Deputies Association*, the El Paso Court of Appeals held that deputy sheriffs meet the definition of "policemen" under the FPERA and are thus "included and covered by the Act." 620 S.W.2d 900, 902 (Tex. Civ. App.—El Paso 1981, writ ref'd n.r.e.). Thereafter, in *Webb County v. Webb County Deputies Association*, the San Antonio Court of Appeals concluded that jailers and detention officers employed in the sheriff's office also qualify as "policemen" under the FPERA. 768

---

9. Stines does not contend that deputy consta-

bles are "fire fighters" under the FPERA.

S.W.2d 953, 955 (Tex. App.—San Antonio 1989, no writ).

On the other hand, in *City of San Antonio*, the San Antonio Court of Appeals concluded that city park rangers do not constitute "policemen" under the FPERA. 850 S.W.2d at 192–93. In that case, the court concluded that although city park rangers regularly serve in a professional law enforcement capacity, they do not do so in "the police department" of the city. *Id.* In reaching this conclusion, the court reviewed the legislative history of the FPERA and determined that the Legislature did not intend to include all protective service employees, but only firemen and city policemen. *Id.* at 192. The court also explained that the word "the" in the phrase "in the police department" connotes a singular entity, which, when applied to the city, was the San Antonio Police Department. *Id.* at 192–93. The court concluded that because the park rangers were employed in the San Antonio Park Rangers Department, which was a separate entity from the San Antonio Police Department, they did not serve "in the police department" of the city. *Id.* at 193.

The parties have cited, and we have located, only two cases that have addressed whether deputy constables constitute "police officers" under the FPERA. In *Wolff v. Deputy Constables Association of Bexar County*, the San Antonio Court of Appeals concluded that deputy constables are not "police officers" under the FPERA "because they do not serve in the 'police department' of the county or the Sheriff's Office." 441 S.W.3d 362, 366 (Tex. App.—San Antonio 2013, no pet.). The court explained that

> [j]ust as the park rangers [in *City of San Antonio*] were employed by the Parks Department of the City of San Antonio, and not by the City of San Antonio Police Department, the Deputy

Constables are employed by the Constable's Office of Bexar County, not by the "police department" of Bexar County or the Sheriff's Office.

*Id.* The court clarified that "all law enforcement agents considered 'police officers' under the Act, including deputy sheriffs, jailers, and detention officers, are employed by the police department of the county or the Sheriff's Office." *Id.*

In *Jefferson County Constables Association v. Jefferson County*, however, the Corpus Christi Court of Appeals expressly disagreed with the holding in *Wolff* and concluded that deputy constables fall within the definition of "police officer" under the FPERA. 512 S.W.3d 434 (Tex. App.—Corpus Christi 2016, pet. granted). In that case, the court concluded that deputy constables are paid employees who are sworn, certified, and full-time and who regularly serve in a professional law enforcement capacity within the meaning of section 174.003(3). *Id.* at 439. Then, turning to the question of whether deputy constables serve in "the police department" of a county, the court specifically compared deputy constables to deputy sheriffs, which, it noted, have been held by several Texas courts to be "police officers" under the FPERA. *Id.* at 439–40. In making this comparison, the court noted that "[t]he offices of sheriff and constable are both established and regulated by the Texas constitution and by statute" and that the statutory provisions concerning sheriffs and constables are both included under Subtitle B of the Texas Local Government Code, titled "Commissioners Court and County Officers." *Id.* at 440. The court also noted that, by statute, deputy constables are required to "qualify in the manner provided for deputy sheriffs" and that both deputy sheriffs and deputy constables "are empowered to preserve the peace within the county." *Id.* The court additionally noted that "[t]he office

of sheriff and constable each have the duty to execute all process and precepts directed to their office by legal authority." *Id.* The court then stated that "[g]iven the liberal construction required by the FPERA, we find no meaningful distinction between deputy sheriffs and deputy constables with respect to the FPERA's definition of 'police officers.'" *Id.*

In reaching this conclusion, the court in *Jefferson County Constables Association* specifically rejected the county's argument that the "FPERA's requirement that police officers serve in '*the* police department of a political subdivision' means there can be only one qualifying police department for a political subdivision." *Id.* The court agreed "that this limiting language would exclude certain peace officers who do not serve in what can be categorized as a 'police department.'" *Id.* (citing *City of San Antonio*, 850 S.W.2d at 192–93). However, the court explained that it did "not interpret such language as operating to exclude deputy constables, who work in a county law enforcement office established by the Texas Constitution." *Id.*

The County argues that the court in *Wolff* correctly decided that deputy constables do not constitute "police officers" under the FPERA because they are not employed in the sheriff's office and, thus, do not serve in "the police department" of a county. By contrast, Stines argues that the court in *Jefferson County Constables Association* correctly decided that the "police department" of a county is not limited to the sheriff's office and that deputy constables also serve in "the police department" of a county for purposes of the FPERA.

 The resolution of this issue requires us to construe the meaning of the phrase "in the police department of a political subdivision" in section 174.003(3) of the FPERA. *See* Tex. Loc. Gov't Code Ann. § 174.003(3). The FPERA does not define the term "the police department" or the phrase "the police department of a political subdivision." *See id.* § 174.003. "Undefined terms in a statute are typically given their ordinary meaning." *In re Hall*, 286 S.W.3d 925, 928 (Tex. 2009). However, courts may not give an undefined statutory term a meaning that is out of harmony or inconsistent with other provisions in the statute. *Id.* at 928–29; *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002). Therefore, "if a different, more limited, or precise definition is apparent from the term's use in the context of the statute, we apply that meaning." *In re Hall*, 286 S.W.3d at 929.

 The term "police department" is commonly defined as "a governmental department concerned with the administration of the police force." WEBSTER'S THIRD INT'L DICTIONARY 1754 (2002). The common meaning of "police force," in turn, is "a professional body of trained officers and men entrusted by a government with the maintenance of public peace and order, the enforcement of laws, and the prevention and detection of crime." *Id.* However, in reviewing the FPERA as a whole, we conclude that a more limited or precise definition of the phrase "the police department of a political subdivision" is apparent from the context of the statute. *See In re Hall*, 286 S.W.3d at 929. Section 174.002, which contains the express legislative policy behind the enactment of the FPERA, states:

(a) The policy of this state is that a political subdivision shall provide its fire fighters and police officers with compensation and other conditions of employment that are substantially the same as compensation and conditions of employment prevailing in comparable private sector employment.

(b) The policy of this state is that fire fighters and police officers, like em-

ployees in the private sector, should have the right to organize for collective bargaining, as collective bargaining is a fair and practical method for determining compensation and other conditions of employment. Denying fire fighters and police officers the right to organize and bargain collectively would lead to strife and unrest, consequently injuring the health, safety, and welfare of the public.

(c) The health, safety, and welfare of the public demands that strikes, lockouts, and work stoppages and slowdowns of fire fighters and police officers be prohibited, and therefore it is the state's duty to make available reasonable alternatives to strikes by fire fighters and police officers.

(d) Because of the essential and emergency nature of the public service performed by fire fighters and police officers, a reasonable alternative to strikes is a system of arbitration conducted under adequate legislative standards. Another reasonable alternative, if the parties fail to agree to arbitrate, is judicial enforcement of the requirements of this chapter regarding compensation and conditions of employment applicable to fire fighters and police officers.

(e) With the right to strike prohibited, to maintain the high morale of fire fighters and police officers and the efficient operation of the departments in which they serve, alternative procedures must be expeditious, effective, and binding.

Tex. Loc. Gov't Code Ann. § 174.002. As section 174.002 makes clear, one of the evils that the Legislature sought to remedy by enacting the FPERA was injury to the "health, safety, and welfare of the public" caused by strikes, lockouts, work stoppages, and slowdowns of firefighters and police officers. *See id.* The Legislature determined that strikes by these types of public employees would be harmful to the public "[b]ecause of the essential and emergency nature of the public services" that they perform. *See id.* The Legislature sought to remedy this evil by enacting the FPERA to prohibit strikes by firefighters and police officers and to provide those employees with: (1) the right to organize and bargain collectively, and (2) reasonable alternatives to strikes, including "a system of arbitration conducted under adequate legislative standards" and judicial enforcement of the FPERA to the extent the parties fail to agree to arbitrate. *See id.* Thus, construing section 174.003(3) in the context of the statute as a whole, including the express legislative policies stated in section 174.002, we conclude that the Legislature intended for the term "the police department of a political subdivision" to refer only to the department of law enforcement officers of a political subdivision who provide "essential and emergency" services to the public and whose absence due to strikes, lockouts, work stoppages, or slowdowns would cause injury to "the health, safety, and welfare of the public."

▮▮▮ With this construction of section 174.003(3) in mind, we agree with other courts that have concluded that the sheriff's office is "the police department" of a county for purposes of the FPERA. *See Wolff,* 441 S.W.3d at 366; *see also Webb Cty. Deputies Ass'n,* 768 S.W.2d at 954–55; *Comm'rs' Court of El Paso Cty.,* 620 S.W.2d at 902. The sheriff of a county is considered to be the county's "chief law enforcement officer." *Aaron v. State,* 161 Tex.Crim. 156, 275 S.W.2d 693, 697 (App. 1954). Further, in addition to designating sheriffs and their deputies as peace officers, the Texas Code of Criminal Proce-

dure specifically states that the sheriff "shall be a conservator of the peace in his county, and shall arrest all offenders against the laws of the State, in his view or hearing, and take them before the proper court for examination or trial." Tex. Code Crim. Proc. Ann. arts. 2.12(1) (West Supp. 2016), 2.17 (West 2005). It also states that the sheriff "shall quell and suppress all assaults and batteries, affrays, insurrections and unlawful assemblies" and "shall apprehend and commit to jail all offenders, until an examination or trial can be had." *Id.* art. 2.17. In addition, section 351.041 of the Texas Local Government Code provides that "[t]he sheriff of each county is the keeper of the county jail" and "shall safely keep all prisoners committed to the jail by a lawful authority, subject to an order of the proper court." Tex. Loc. Gov't Code Ann. § 351.041(a) (West 2005). Although "[t]he sheriff may appoint a jailer to operate the jail and meet the needs of the prisoners ... the sheriff shall continue to exercise supervision and control over the jail." *Id.* § 351.041(b). Additionally, the sheriff may, with the approval of the commissioners court, employ guards to ensure the safekeeping of prisoners and the security of the jail, and has the authority to summon guards of a sufficient number to prevent an escape from jail or the rescue of a prisoner. *See id.* § 85.005(a), (b) (West 2008); Tex. Code Crim. Proc. Ann. art. 16.21 (West 2015). Deputy sheriffs are statutorily authorized to perform the acts and duties of the sheriff. *See* Tex. Loc. Gov't Code Ann. § 85.003(e) (West 2008); Tex. Code Crim. Proc. Ann. art. 2.20 (West 2005). Accordingly, we conclude that the statutory powers and duties of a sheriff and his deputies make clear that the sheriff's office is a department of law enforcement officers of the county who provide "essential and emergency" services to the public and whose absence due to strikes, lockouts, work stoppages, or slowdowns

would cause injury to "the health, safety, and welfare of the public." *See Comm'rs' Court of El Paso Cty.*, 620 S.W.2d at 902 (stating that the policy provisions behind the enactment of the FPERA, as stated in the former version of section 174.002, apply to deputy sheriffs).

We do not, however, agree with Stines's contention that a county constable's office can also be considered "the police department" of a county for purposes of the FPERA. While it is true that deputy constables are peace officers and serve, at least in part, in a law enforcement capacity, *see* Tex. Code Crim. Proc. Ann. arts. 2.12(2) (West Supp. 2016), 2.13 (West 2005); *Wolff*, 441 S.W.3d at 366, we conclude that a county constable's office is not a department of a county that provides the critical, emergency services to the public that are contemplated by the FPERA. Chapter 86 of the Texas Local Government Code, which governs the office of the constable in Texas, expressly sets forth the general powers and duties of the constable as follows:

(a) A constable shall execute and return as provided by law each process, warrant, and precept that is directed to the constable and is delivered by a lawful officer. Notices required by Section 24.005, Property Code, relating to eviction actions are process for purposes of this section that may be executed by a constable.

(b) A constable may execute any civil or criminal process throughout the county in which the constable's precinct is located and in other locations as provided by the Code of Criminal Procedure or by any other law.

(c) A constable expressly authorized by statute to perform an act or service, including the service of civil or

criminal process, citation, notice, warrant, subpoena, or writ, may perform the act or service anywhere in the county in which the constable's precinct is located.

(d) Regardless of the Texas Rules of Civil Procedure, all civil process may be served by a constable in the constable's county or in a county contiguous to the constable's county, except that a constable who is a party to or interested in the outcome of a suit may not serve any process related to the suit. All civil process served by a constable at any time or place is presumed to be served in the constable's official capacity if under the law the constable may serve that process in the constable's official capacity. A constable may not under any circumstances retain a fee paid for serving civil process in the constable's official capacity other than the constable's regular salary or compensation. Any fee paid to a constable for serving civil process in the constable's official capacity shall be deposited with the county treasurer of the constable's county.

(e) The constable shall attend each justice court held in the precinct.

Tex. Loc. Gov't Code Ann. § 86.021 (West Supp. 2016). Section 86.011 of the Local Government Code authorizes the appointment of deputy constables and provides that deputy constables "handle the business of the constable's office that originates in the constable's precinct." *Id.* § 86.011(a) (West 2008). Thus, the general powers and duties of constables and their deputies, as enumerated by the Legislature, involve serving civil and criminal process and attending the justice courts held in their precinct. *See id.* §§ 86.011, 86.021. We recognize that many constable depart-

ments also provide valuable law enforcement services the same as those of sheriff departments. However, the primary statutory duties of a constable, while constituting valuable and important services to the county and the public, are not the type of critical emergency services to the public encompassed by the narrow definition enacted by the Legislature when it created the FPERA.

A strike, lockout, work stoppage, or slowdown by deputy constables would not likely cause the severity of injury to "the health, safety, and welfare of the public[,]" as contemplated by the FPERA. The law provides for others, besides deputy constables, to serve civil and criminal process in Texas. *See, e.g.*, Tex. Code Crim. Proc. Ann. arts. 2.12 (identifying thirty-five categories of persons who constitute a "peace officer"), 2.13(b)(2) (providing that peace officers "shall ... execute all lawful process issued to the officer by any magistrate or court"); Tex. Loc. Gov't Code Ann. § 85.021(a) (West 2008) (providing that "[t]he sheriff shall execute all process and precepts directed to the sheriff by legal authority and shall return the process or precept to the proper court on or before the date the process or precept is returnable"), § 86.021 (providing that the powers and duties relating to the execution and return of civil and criminal process as stated in section 86.021 apply to the constable himself); Tex. R. Civ. P. 103 (providing that civil process may be served by (1) any sheriff or constable or other person authorized by law, (2) any person authorized by law or by written order of the court who is not less than eighteen years of age, (3) any person certified under order of the Supreme Court, or (4) by the clerk of the court in which the case is pending, if service by registered or certified mail or service by publication is requested); Tex. R. Civ. P. 176.5 (providing that "[a] subpoena may be served at any place within the

State of Texas by any sheriff or constable of the State of Texas, or any person who is not a party and is 18 years of age or older"). Additionally, should deputy constables strike, the county sheriff's office will continue to provide emergency law enforcement services to the public on behalf of the county, as well as other essential public services, including operation and supervision of the county jail. *See* Tex. Code Crim. Proc. Ann. § 2.17; Tex. Loc. Gov't Code Ann. § 351.041. Thus, unlike the effect of a strike by the employees of the sheriff's office or the fire department of a county, a strike by deputy constables would not cause the emergency services of the county to cease to function as contemplated by the FPERA.

Although the court in *Jefferson County Constables Association* concluded that deputy constables serve in "the police department" of a county for purposes of the FPERA, the court in that case did not analyze the definition of the term "police officer" in the context of the entire statute, including the stated policy provisions behind the enactment of the FPERA as set forth in section 174.002. 512 S.W.3d 434, 440. As the Texas Supreme Court has explained, however, courts must "determine legislative intent by reading the statute as a whole and interpreting the legislation to give effect to the entire act and not just its isolated portions." *Tex. Nat. Res. Conservation Comm'n v. Lakeshore Util. Co.*, 164 S.W.3d 368, 378 (Tex. 2005). We therefore decline Stines's invitation to adopt the reasoning of the court in *Jefferson County Constables Association* as it relates to whether deputy constables constitute "police officers" under the FPERA.

■ We conclude that deputy constables do not serve "in the police department of a political subdivision" and, thus, are not "police officers" under section 174.003(3) of the FPERA, because: (1) a county consta-

ble's office does not provide the critical, emergency services to the public that are contemplated by the FPERA; and (2) a strike, lockout, work stoppage, or slowdown by deputy constables would not likely cause injury to "the health, safety, and welfare of the public." *See* Tex. Loc. Gov't Code Ann. §§ 174.002, 174.003(3). It follows, then, that because deputy constables are not "police officers" under the FPERA, they have no right under the FPERA to organize, bargain collectively, or enter into a collective bargaining agreement with their public employer. *See id.* § 174.023; Tex. Gov't Code Ann. § 617.002. Accordingly, Stines's claims in this case, which complain about the County's performance under the Agreement, do not complain about acts or omissions "that relate[ ] to the rights or duties under [the FPERA,]" as required for a claim to be brought under section 174.251 and to fall within the waiver of immunity created by sections 174.008 and 174.251 of the FPERA. *See* Tex. Loc. Gov't Code Ann. §§ 174.008, 174.251. We therefore conclude that the waiver of immunity created by sections 174.008 and 174.251 does not apply to Stines's claims in this case.

#### b. Waiver under section 174.252

■ Stines also contends that section 174.252 of the FPERA constitutes an express statutory waiver of the County's immunity from suit in this case. Section 174.252, titled "Judicial Enforcement When Public Employer Declines Arbitration[,]" provides:

 (a) If an association requests arbitration as provided by Subchapter E and a public employer refuses to engage in arbitration, on the application of the association, a district court for the judicial district in which a majority of affected employees reside may enforce the requirements of Section 174.021 as

to any unsettled issue relating to compensation or other conditions of employment of fire fighters, police officers, or both.

(b) If the court finds that the public employer has violated Section 174.021, the court shall:

 (1) order the public employer to make the affected employees whole as to the employees' past losses;

 (2) declare the compensation or other conditions of employment required by Section 174.021 for the period, not to exceed one year, as to which the parties are bargaining; and

 (3) award the association reasonable attorney's fees.

(c) The court costs of an action under this section, including costs for a master if one is appointed, shall be taxed to the public employer.

*Id.* § 174.252. However, even assuming that section 174.252—either by its own terms or in combination with section 174.008—constitutes a waiver of a public employer's immunity from suit for claims brought under section 174.252 to enforce the FPERA against a public employer, we conclude that it does not apply to Stines's claims in this case.

As we have already explained, the FPERA does not apply to deputy constables because they do not meet the definition of "police officer" under section 174.003(3). *See id.* § 174.003(3). However, even if we were to assume that deputy constables are "police officers" under the statute, we would nevertheless conclude that section 174.252 does not waive the County's immunity from suit for Stines's claims in this case. Section 174.252, by its express terms, applies only when an association has requested arbitration "as provided by Subchapter E" of the FPERA and the public employer refuses to arbitrate. *Id.* § 174.252(a). Subchapter E's arbitration provisions apply only to arbitration for collective bargaining impasses; they do not apply to arbitration of disputes pursuant to the contractual terms of a fully-negotiated collective bargaining agreement. *Id.* §§ 174.153, 174.156; *see also Jefferson Cty. Constables Ass'n,* 512 S.W.3d at 441, n.3 (concluding that "Chapter 174's arbitration provisions apply only to arbitration for collective bargaining impasses" and not to arbitration under a fully-negotiated collective bargaining agreement); *City of Laredo v. Mojica,* 399 S.W.3d 190, 194 (Tex. App.—San Antonio 2012, pet. denied) (concluding that the "FPERA applies only to arbitration for collective bargaining impasses").

Further, a plain reading of section 174.252 unambiguously indicates that it applies only to claims: (1) brought by an association (2) against a public employer (3) to enforce the requirements of Section 174.021 as to any unsettled issue relating to compensation or other conditions of employment of firefighters, police officers, or both. *See* Tex. Loc. Gov't Code Ann. § 174.252. Section 174.021 of the FPERA provides:

A political subdivision that employs fire fighters, police officers, or both, shall provide those employees with compensation and other conditions of employment that are:

 (1) substantially equal to compensation and other conditions of employment that prevail in comparable employment in the private sector; and

 (2) based on prevailing private sector compensation and conditions of employment in the labor market area in other jobs that require the same or similar skills, ability, and train-

ing and may be performed under the same or similar conditions.

*Id.* § 174.021.

Here, the claims asserted against the County have been brought by Stines, not an association, as required under section 174.252. *See id.* § 174.252(a). Further, although Stines alleges in his petition that the County has refused to participate in arbitration, he does not contend that the County has refused to participate in arbitration "as provided by Subchapter E" of the FPERA—i.e., arbitration of a collective bargaining impasse. Instead, he alleges that the County has refused to participate in arbitration of his wrongful discharge claim pursuant to the contractual terms of a fully negotiated collective bargaining agreement. Finally, even construing Stines's pleadings liberally, Stines's claims do not seek to enforce the requirements of section 174.021. In other words, Stines does not allege that the County has failed to provide him or other "police officers" with compensation or other conditions of employment that are: (1) "substantially equal to compensation and other conditions of employment that prevail in comparable employment in the private sector"; or (2) "based on prevailing private sector compensation and conditions of employment in the labor market area in other jobs that require the same or similar skills, ability, and training and may be performed under the same or similar conditions." *See* Tex. Loc. Gov't Code Ann. § 174.021. Instead, Stines alleges that the County failed to participate in arbitration of his wrongful discharge claim as required by the terms of the Agreement. Accordingly, to the extent section 174.252 can be construed as a limited statutory waiver of immunity from suit for claims brought under section 174.252 against a public employer,

we conclude that it does not waive the County's immunity from suit in this case.

Because we conclude that Stines has failed to allege facts that affirmatively demonstrate that the FPERA waives the County's immunity from suit for Stines's claims in this case, we sustain the portion of the County's third issue that challenges this ground. *See Miranda*, 133 S.W.3d at 227.

### 3. Waiver by Contract

■ Stines also argued in his response to the County's plea to the jurisdiction that certain language in the Agreement expressly waives the County's immunity from suit for his claims in this case. Stines bases this argument on the following provision in the "Preamble" of the Agreement:

> This Agreement is made and entered into by and between the County of Jefferson and the Precincts 1, 2, 4, 6, 7, and 8 Constables of said County, in the State of Texas, and the Jefferson County Deputy Constables Association, hereinafter referred to as the "Association," *in accordance with all applicable state and federal statutes, including the Fire and Police Employee Relations Act of Texas (Chapter 174 of the Texas Local Government Code).*

(Emphasis added). Stines argues that by including this language in the Agreement, the parties adopted or incorporated Chapter 174 by reference into the Agreement and that the County thereby contractually agreed to be bound by Chapter 174, including its statutory waivers of immunity. The County challenges this ground as part of its fourth issue on appeal, asserting that in the absence of express legislative authorization, as is the case here, a County cannot contract to waive its immunity from

suit.[10]

As we have already concluded, the FPERA does not apply to deputy constables because they do not meet the definition of "police officer" under section 174.003(3), and the FPERA does not waive the County's immunity from suit for Stines's claims. *See* Tex. Loc. Gov't Code Ann. § 174.003(3). However, to the extent Stines argues that the parties had the ability to voluntarily agree by contract to be bound by the FPERA, even though the FPERA would not otherwise apply to them, and that by doing so, the County contractually agreed to waive its immunity from suit to the extent permitted by the FPERA, we disagree.

◼ A governmental entity that enters into a contract waives its immunity from liability on the contract, but it does not waive its immunity from suit. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Instead, a waiver of immunity from suit for a claimed breach of contract requires a clear and unambiguous expression of the Legislature.[11] *Travis Cty. v. Pelzel & Assocs., Inc.*, 77 S.W.3d 246, 248 (Tex. 2002), *superseded by statute on other grounds*, Tex. Loc. Gov't Code Ann. § 262.007 (West 2016), *as recognized in Tooke*, 197 S.W.3d at 342; *IT-Davy*, 74 S.W.3d at 858; *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 660 (Tex. 2008) (quoting *IT-Davy*, 74 S.W.3d at 853) (" '[I]t is the Legislature's sole province to waive or abrogate sovereign immunity.' "). As noted, the Legislature may waive a governmental entity's immunity from suit either by statute or legislative resolution. *Little-Tex*, 39 S.W.3d at 594; *Potter Cty. v. Tuckness*, 308 S.W.3d 425, 430 (Tex. App.—Amarillo 2010, no pet.).

◼ Even if the language in the Agreement on which Stines relies could properly be construed as an agreement between the parties to waive the County's immunity from suit, it does not constitute a waiver of immunity by the Legislature. Only the Legislature, not contracting parties, may waive a governmental entity's immunity from suit. *See IT-Davy*, 74 S.W.3d at 858 (rejecting argument that an administrative agent could waive a state agency's sovereign immunity by agreeing to contractual terms requiring all claims or disputes related to the contract to be decided by arbitration or in court and explaining that "[o]nly the Legislature can waive sovereign immunity from suit in a breach-of-contract claim"); *City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501, 521 (Tex. App.—Austin 2014, no pet.) (citing *IT-Davy*, 74 S.W.3d at 857–58 and noting that the Texas Supreme Court "has squarely rejected the notion that a governmental entity with authority

10. The trial court did not rule on the grounds raised in the County's fourth issue—namely, (1) whether that the County's waived its immunity from suit by entering into the Agreement, which expressly states that it is made and entered into in accordance with the FPERA; and (2) whether the County waived its immunity from suit by accepting benefits under the Agreement. However, as noted, we must affirm the trial court's order denying the County's plea to the jurisdiction if it can be upheld on any legal theory that was properly before the trial court. *See Reyna*, 709 S.W.2d at 648; *Carroll Indep. Sch. Dist.*, 245 S.W.3d at 625 n.19. Stines raised both of these theo-

ries of waiver in his response to the County's plea to the jurisdiction. Therefore, we will consider these grounds here.

11. Although Stines has alleged claims for declaratory and mandamus relief, as opposed to a claim for breach of contract, he essentially alleges that the County breached the terms of the Agreement by refusing to participate in arbitration of his wrongful discharge claim, and seeks to enforce the County's performance of its alleged contractual obligations by compelling the County to submit to arbitration under the terms of the Agreement.

to enter contracts, or an agent acting on its behalf, can contractually waive immunity from suit, as Carowest insists occurred here"); *City of Willow Park, Tex. v. E.S. & C.M., Inc.*, 424 S.W.3d 702, 709 (Tex. App.—Fort Worth 2014, pet. denied) (concluding that only the Legislature can waive immunity from suit and that parties to a contract cannot, between themselves, voluntarily agree (1) to waive an entity's immunity from suit or, conversely, (2) to abrogate the Legislature's express intention to waive such immunity); *Webb Cty. v. Khaledi Props., Ltd.*, No. 04-12-00251-CV, 2013 WL 3871060, at *2 (Tex. App.—San Antonio July 24, 2013, no pet.) (mem. op.) ("Immunity from a breach of contract suit may be waived only by the Legislature, not by the contracting parties."); *Labrado v. Univ. of Tex. at El Paso*, No. 03-10-00009-CV, 2012 WL 43385, at *3 (Tex. App.—Austin Jan. 5, 2012, no pet.) (mem. op.) ("Only the Legislature, not contracting parties, may waive a governmental unit's immunity."); *Tuckness*, 308 S.W.3d at 430 ("Absent express legislative authorization, the County could not contract to waive its immunity from suit."). Because the language in the Agreement does not constitute a valid waiver of the County's immunity from suit, we sustain the portion of the County's fourth issue that challenges this ground.

### 4. Waiver by Conduct

 Stines also argued in his response to the County's plea to the jurisdiction that the County waived its immunity from suit through its conduct. Specifically, Stines contends that the County waived its immunity by accepting Stines's services as a deputy constable and then declining to honor its own obligations under the Agreement. The County challenges this ground in the remaining portion of its fourth issue, asserting that "[t]here is no waiver-by-conduct exception to sovereign immunity for a breach of contract."

The so-called "waiver-by-conduct" exception to immunity from suit originated in a footnote to the Texas Supreme Court's majority opinion in *Federal Sign v. Texas Southern University*, 951 S.W.2d 401, 408 n.1 (Tex. 1997). In that case, the Court considered whether the State waives its immunity from suit by entering into a contract with a private citizen for goods and services. *Fed. Sign*, 951 S.W.2d at 404, 408. The Court concluded that in such circumstances, the State waives its immunity from liability only. *Id.* The State's act of contracting does not waive its immunity from suit, and thus an individual must obtain legislative consent before it may sue the State on a breach of contract claim. *Id.* In a footnote, however, the Court suggested that "[t]here may be other circumstances where the State may waive its immunity by conduct other than simply executing a contract so that it is not always immune from suit when it contracts." *Id.* at 408 n.1.

However, in the years since its decision in *Federal Sign*, the Texas Supreme Court has repeatedly declined requests to recognize a waiver-by-conduct exception in a breach-of-contract suit against a governmental entity, and has emphasized that waivers of immunity generally should be left to the Legislature. *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 414 (Tex. 2011); *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007); *Catalina Dev., Inc. v. Cty. of El Paso*, 121 S.W.3d 704, 705–06 (Tex. 2003); *IT-Davy*, 74 S.W.3d at 857; *Little-Tex*, 39 S.W.3d at 598. As such, the Court "has never gone further than its suggestion in *Federal Sign* that such a waiver *might* conceivably occur under some set of facts it has not yet seen." *Carowest Land*, 432 S.W.3d at 521. The Court has also

expressly rejected the notion that a governmental entity waives its immunity from suit merely by accepting benefits under a contract. *Koseoglu*, 233 S.W.3d at 840; *Tex. A&M Univ.-Kingsville v. Lawson*, 87 S.W.3d 518, 520–21 (Tex. 2002); *Little-Tex*, 39 S.W.3d at 598. Similarly, this Court has repeatedly rejected requests to recognize a waiver-by-conduct exception in the context of a breach-of-contract claim, as well as other types of claims. *See City of Conroe v. TPProperty LLC*, 480 S.W.3d 545, 564–65 (Tex. App.—Beaumont 2015, no pet.) (refusing to apply waiver-by-conduct exception to breach of contract claims); *Hardin Cty. Sheriff's Dep't v. Smith*, 290 S.W.3d 550, 554 (Tex. App.—Beaumont 2009, no pet.) (noting that the Texas Supreme Court has declined to create a waiver-by-conduct exception to the sovereign immunity rule and refusing to apply such an exception in a tort suit involving claims for negligence, gross negligence, and intentional infliction of emotional distress); *City of Roman Forest v. Stockman*, 141 S.W.3d 805, 813 (Tex. App.—Beaumont 2004, no pet.) (explaining that "[i]mmunity from suit is not waived merely by accepting some of the benefits of a contract" and rejecting request to apply waiver-by-conduct exception to breach-of-contract claim).

We note, however, that at least one intermediate appellate court has concluded that a governmental entity may waive its immunity from suit by its conduct in "extraordinary factual circumstances." *Tex. S. Univ. v. State St. Bank & Tr. Co.*, 212 S.W.3d 893, 907 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). The facts in *State Street* were as follows: (1) after soliciting bids for a comprehensive energy conservation project, Texas Southern University ("TSU") notified Viron, a contractor, that the university's board of regents had approved an agreement for Viron to audit the university's energy system; (2) university officials instructed Viron to commence work on the audit; (3) TSU's general counsel notified a TSU official that the energy audit agreement was "acceptable for final execution," and the university president executed the energy audit agreement; (4) Viron completed the energy audit; (5) as a result of the audit's findings, Viron submitted a proposal to TSU offering to commence work on six energy conservation projects on the TSU campus; (6) the TSU Board of Regents authorized approval of the projects, and the university's president executed an agreement requiring Viron to provide services and equipment to TSU in connection with the projects; (7) TSU and Viron also entered into an equipment lease agreement to finance the purchase of equipment needed to complete the projects; and (8) in a letter attached to the equipment lease agreement, TSU's general counsel represented to Viron that the equipment lease agreement was "duly authorized by all necessary action on the part[ ] of [TSU]" and that the equipment lease agreement was "legal, valid, and binding" and "enforceable in accordance with its terms." *Id.* at 897–99, 907–08. After Viron provided approximately $13 million in equipment and services to TSU in connection with the projects, TSU claimed that its agreements with Viron were not valid and refused to make any payments due. *Id.* Thereafter, Viron filed suit, and TSU attempted to invoke sovereign immunity to bar Viron's claims. *Id.* at 897. Viron responded that the facts of the case were sufficient to justify a finding that TSU waived its immunity from suit by its conduct. *Id.* at 908. In addition, Viron argued that the injustice was even worse because the case also included an additional fact that did not appear in any previous case: "The government officials lured Viron into the [equipment lease agreement] with false promises that the contract would be valid and enforceable, then disclaimed any obli-

gation on the contract by taking the position that the contract was not valid after all." *Id.* The court of appeals agreed with Viron and concluded that under the extraordinary factual circumstances of that case, TSU had waived its immunity from suit based on its conduct. *Id.*

Even if we were to assume that such an exception exists, the facts alleged in Stines's pleadings do not warrant its application in this case. Unlike the plaintiff in *State Street*, Stines does not allege that he, or the Deputy Constables Association on his behalf, was misled or "lured" into the Agreement by false promises that the County never intended to fulfill. *See MBP Corp. v. Bd. of Trs. of Galveston Wharves*, 297 S.W.3d 483, 493 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Further, Stines does not allege that he has conferred millions of dollars' worth of benefits upon the County, only to be denied any return consideration under the Agreement. *See City of Freeport v. Briarwood Holdings, L.L.C.*, No. 01-11-01108-CV, 2013 WL 1136576, at *4 (Tex. App.—Houston [1st Dist.] Mar. 19, 2013, no pet.) (mem. op.). To the contrary, the only conduct of which Stines complains is the County's refusal to participate in arbitration of his wrongful discharge claim under the terms of the Agreement. He does not allege that the County failed or refused to perform other obligations under the Agreement, including compensating him for his services in accordance with the Agreement's terms during the time he was employed by the County. We therefore conclude that this case is distinguishable from *State Street* and does not involve the type of "extraor-dinary factual circumstances" that existed in that case.

Further, since *State Street* was decided, the Texas Supreme Court has reaffirmed its stance against a waiver-by-conduct exception in governmental immunity cases. *See Sharyland Water Supply Corp.*, 354 S.W.3d at 414. In *Sharyland*, the Court stated that "[c]reating a waiver-by-conduct exception would force the State to expend its resources to litigate the waiver-by-conduct issue before enjoying sovereign immunity's protections—and this would defeat many of the doctrine's underlying policies." *Id.* (quoting *IT-Davy*, 74 S.W.3d at 857). The Court also noted that "the Legislature [has] enacted comprehensive schemes that allow contracting parties to resolve breach-of-contract claims against the government" and that "[b]y providing these avenues of redress, the Legislature has balanced competing private and public interests—a balance that would be thwarted if we allowed waiver-by-conduct exceptions in breach-of-contract actions against the government." *Id.* In light of the Texas Supreme Court's opinion in *Sharyland* and the specific facts of this case, we conclude that the County did not waive its immunity from suit by its conduct in this case. We therefore sustain the remaining portion of the County's fourth issue.

Because we sustain issue two, the portion of issue three that addresses governmental immunity, and issue four, we also sustain issue one, in which the County contends generally that Stines failed to plead and prove a valid waiver of the County's immunity from suit.[12]

12. Because we conclude that governmental immunity bars Stines's claims, it is unnecessary to address the second jurisdictional issue raised by the County (and the remaining portion of the County's third issue)—namely, whether Stines lacks standing to assert his claims in this case. *See* Tex. R. App. P. 47.1; *Multi-Cty. Water Supply Corp.*, 321 S.W.3d at 909 n.4. Further, because the trial court lacked jurisdiction over Stines's claims in this case, its order granting Stines's request for a declaratory judgment and request for a writ

## IV. Conclusion

We conclude that each of Stines's claims against the County is barred by governmental immunity. Accordingly, we reverse the trial court's order denying the County's plea to the jurisdiction, vacate the trial court's order granting Stines's request for a declaratory judgment and request for writ of mandamus, and render judgment granting the County's plea to the jurisdiction and dismissing the trial court's cause for want of jurisdiction.

REVERSED AND RENDERED.

LEANNE JOHNSON, Justice, dissenting.

I respectfully disagree with the majority on the central question in this case: whether Chapter 174 of the Texas Local Government Code, titled the Fire and Police Employee Relations Act ("FPERA"), applies to Stines, a Jefferson County deputy constable. *See* Tex. Loc. Gov't Code Ann. §§ 174.001-174.253 (West 2016). The FPERA defines the term "police officer" to mean "a paid employee who is sworn, certified, and full-time, and who regularly serves in a professional law enforcement capacity in the police department of a political subdivision." *Id.* § 174.003(3). I conclude that Stines meets that definition.

In *Jefferson County Constables Association v. Jefferson County*, 512 S.W.3d 434 (Tex. App.—Corpus Christi 2016, pet. granted) (a case transferred to the Corpus Christi Court of Appeals from our Court pursuant to docket equalization), the Corpus Christi Court of Appeals concluded that the Jefferson County deputy constables are paid employees who are sworn, certified, and full-time and who regularly serve in a professional law enforcement capacity within the meaning of section

174.003(3). *Id.* at 439. As noted by the Corpus Christi Court, the offices of constable and sheriff, "are both established and regulated by the Texas constitution and by statute." *Id.* at 440; *see* Tex. Const. art. V, §§ 18 (constables), 23 (sheriffs); Tex. Loc. Gov't. Code Ann. §§ 85.001-85.023 (sheriffs) and 86.001-86.025 (constables) (West 2008 & Supp. 2016). The statutory provisions concerning sheriffs and constables are both included under Subtitle B of the Texas Local Government Code, titled "Commissioners Court and County Officers." *Id.* Deputy constables must "qualify in the manner provided for deputy sheriffs[ ]" and both deputy sheriffs and deputy constables are statutorily designated as "peace officers." Tex. Loc. Gov't Code Ann. § 86.011; Tex. Code Crim. Proc. Ann. art. 2.12(1), (2) (West Supp. 2016). As peace officers, deputy constables are empowered to preserve the peace within their jurisdiction, execute lawful process, give notice of all offenses committed within their jurisdiction, and arrest offenders, without a warrant, where authorized by law. *Id.* art. 2.13 (West 2005). The Corpus Christi Court concluded that "[g]iven the liberal construction required by the FPERA, we find no meaningful distinction between deputy sheriffs and deputy constables with respect to the FPERA's definition of 'police officers.'" *Jefferson Cty. Constables Ass'n*, 512 S.W.3d at 440. In reaching this conclusion, the Corpus Christi Court specifically rejected Jefferson County's argument that the "FPERA's requirement that police officers serve in '*the* police department of a political subdivision' means there can be only one qualifying police department for a political subdivision." *Id.* I agree with the Corpus Christi Court.

The majority implicitly disagrees with the conclusion reached by the Corpus

of mandamus was void. *See Houston Pipeline Co.*, 213 S.W.3d at 429. We therefore do not reach the County's fifth issue, which com-

plains about one of the trial court's fact findings in that order.

Christi Court of Appeals and adopts a result that aligns with the result reached by the San Antonio Court of Appeals decision in *Wolff v. Deputy Constables Association of Bexar County*, 441 S.W.3d 362, 366 (Tex. App.—San Antonio 2013, no pet.). But, the majority does not appear to adopt the reasoning of the San Antonio Court. In *Wolff*, the San Antonio Court based its decision in large part upon the Legislature's inclusion of "the" in the phrase "the police department of a political subdivision," concluding that the Bexar County deputy constables are employed by constables and not by the " 'police department' of Bexar County or the Sheriff's Office." *Id.* at 366.

The majority takes a different approach than the San Antonio Court, but reaches the same result. The majority states:

> The resolution of this issue requires us to construe the meaning of the phrase "in the police department of a political subdivision" in section 174.003(3) of the FPERA. *See* Tex. Loc. Gov't Code Ann. § 174.003(3). The FPERA does not define the term "the police department" or the phrase "the police department of a political subdivision." *See id.* § 174.003.

According to the majority, a "more limited or precise definition of the phrase 'the police department of a political subdivision' is apparent from the context of the statute[ ]" and the legislative purpose stated within the statute. The majority reasons that based upon the express purpose of the statute, the Legislature intended

> for the term "the police department of a political subdivision" to refer only to the department of law enforcement officers of a political subdivision who provide "essential and emergency" services to the public and whose absence due to

strikes, lockouts, work stoppages, or slowdowns would cause injury to "the health, safety, and welfare of the public."

Notably, the majority does not conclude that the statute is ambiguous. Furthermore, neither party in the case at bar argues that the statute is ambiguous, nor did either party present any evidence to the trial court regarding the "primary duties" of Stine or of Jefferson County constables or deputy constables, nor did they provide any evidence to the trial court of whether or not deputy constables in Jefferson County provide "essential and emergency services" to the public. The majority concludes that the "primary statutory duties of a constable . . . are not the type of critical emergency services to the public encompassed by the narrow definition enacted by the Legislature when it created the FPERA." I find no support in the record before us for the majority's conclusion, nor do I find the majority's suggested "more limited or precise definition of the phrase 'the police department of a political subdivision' " to be evident from the plain language in the statute. Additionally, while it may not have been the intention of the majority to do so, I believe the approach taken by the majority fails to acknowledge the important civil and criminal law enforcement functions served by the dedicated men and women who serve as deputy constables—peace officers who are "sworn, certified, and full-time, and [ ] who regularly serve[ ] in a professional law enforcement capacity[ ]" for the people of Jefferson County, Texas.[13] *See Jefferson Cty. Constables Ass'n*, 512 S.W.3d at 439 (quoting Tex. Loc. Gov't Code Ann. § 174.003).

Accordingly, I respectfully disagree with the majority. I would affirm the trial

---

13. According to the Justices of the Peace and Constables Association, the first Constable was appointed in 1823. *See* Justices of the

Peace & Constables Association of Texas, Inc., https:www.jpca.com/history (last visited June 8, 2017). Constables and their deputies pro-

court's ruling denying the plea to the jurisdiction filed by Jefferson County.[14]

vide valuable services that include acting as court officers in Justice of the Peace Courts, serving process and warrants, and performing various law enforcement functions. They are granted Constitutional authority to enforce civil and criminal laws. *See* Tex. Const. art. V, § 18 (creating the office of constable). For example, as a peace officer, a deputy constable may be authorized to preserve the peace within the county; to make arrests for felonies or offenses against the public peace that are committed in the officer's view; to enforce state traffic regulations; or to assist other law enforcement officers under interlocal agreements. *See* Tex. Code Crim. Proc. Ann. arts. 2.13(a) (West 2005), 14.01 (West 2015); Tex. Transp. Code Ann. § 701.002 (West 2011); Tex. Loc. Gov't Code Ann. §§ 362.001-362.003 (West 2005). The day-to-day activities of a particular Constable's office may vary depending upon the county and the precinct within each county, as well as the particular circumstances. *See generally* Lorie Rubenser & Gloria Priddy, *Constables, Marshals, and More: Forgotten Offices in Texas Law Enforcement* 40-41(2011).

14. In its supplemental briefing with this Court, the Appellee argued that the Corpus Christi Court of Appeals has specifically concluded that the collective bargaining agreement between the Jefferson County Constables Association and Jefferson County is covered by the FPERA. *See Jefferson Cty. Constables Ass'n*, 512 S.W.3d at 440. Appellee further argues that "it has now been fully litigated and determined that the collective bargaining rights outlined in Texas Local Government Code chapter 174 apply to deputy constables such as Appellee." Jefferson County, the Appellant in the case at bar (the Appellee in *Jefferson County Constables Association*), did not file any supplemental briefing with this Court after the Corpus Christi Court issued its opinion, although we note that the Supreme Court has granted discretionary review of the Corpus Christi case. To the extent that Appellee's supplemental briefing is attempting to make an argument for issue preclusion or collat-

eral estoppel, I need not reach that issue because in my opinion it would not grant Stines any greater relief on the controlling issue. Nevertheless, I also note that collateral estoppel is an affirmative defense. *See Calabrian Corp. v. All. Specialty Chems., Inc.*, 418 S.W.3d 154, 158 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The *Jefferson Cty. Constables Ass'n* case was on appeal at the time Jefferson County filed its appeal in this case. As a general rule, a judgment is final for the purposes of issue and claim preclusion despite the fact that an appeal may be pending. *See Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986). The judgment from the Corpus Christi Court of Appeals was rendered three months after the notice of appeal was filed by Jefferson County in the *Stines* case. Issue preclusion or collateral estoppel is a judicially created doctrine designed to promote judicial efficiency, to protect parties from multiple lawsuits, and to prevent inconsistent judgments by preventing relitigation of an ultimate issue. *See Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001). "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982); *see also John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288 (Tex. 2002); *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992) ("Issue preclusion, or collateral estoppel, prevents relitigation of particular issues already resolved in a prior suit."). Whether collateral estoppel is applicable is a question of law. *McRae Expl. & Prod., Inc. v. Reserve Petroleum Co.*, 962 S.W.2d 676, 680 (Tex. App.—Waco 1998, pet. denied). Because I conclude that Stines, as a Jefferson County deputy constable, is covered by the Fire and Police Employee Relations Act, I

need not consider the effect of collateral estoppel or issue preclusion on Appellant's arguments. *See* Tex. R. App. P. 47.1.