In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-23-00382-CV

BEAUMONT INDEPENDENT SCHOOL DISTRICT, Appellant

V.

LRG-LOSS RECOVERY GROUP LLC AND RANDALL HARRIS,
Appellees

**On Appeal from the 128th District Court**
**Orange County, Texas**
**Trial Cause No. A190049-C**

## MEMORANDUM OPINION

This is an interlocutory accelerated appeal concerning whether a contractual agreement between Appellant Beaumont Independent School District ("BISD") and Appellees LRG-Loss Recovery Group LLC and Randall Harris ("Appellees") was "properly executed" on BISD's behalf as required to waive BISD's governmental immunity under Chapter 271 of the Texas Local Government Code. *See* Tex. Loc. Gov't Code Ann. § 271.151(2)(A). Randall Harris ("Harris"), and his company,

LRG-Loss Recovery Group LLC ("LRG"), filed a breach of contract claim against BISD, alleging that BISD owes them money under a Public Adjuster Contract ("the Contract"), which was signed by BISD's superintendent, Dr. John Frossard ("Frossard"). On appeal, BISD argues the trial court lacked subject matter jurisdiction over Appellees' breach of contract claim, because the Contract was not "properly executed" by BISD as required to waive BISD's governmental immunity because the Board of Managers (the "Board") never approved or ratified the Contract or delegated Frossard authority to execute the Contract on its behalf.

We note that this Court previously affirmed the trial court's denial of BISD's Original and Renewed Pleas to the Jurisdiction in which BISD raised different arguments concerning governmental immunity in this case. *See Beaumont Indep. Sch. Dist. v. LRG-Loss Recovery Grp. LLC*, No. 09-22-00144-CV, 2023 WL 3521936, at **1-5, 11 (Tex. App.—Beaumont May 18, 2023, pet. denied) (mem. op.) (hereinafter "*BISD I*"). The current appeal concerns the trial court's denial of BISD's latest Plea to the Jurisdiction ("Third Plea") in which BISD raised its new argument that the Contract was not "properly executed" as required to waive its governmental immunity. BISD appeals the trial court's denial of its Third Plea. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (permitting an interlocutory appeal of a trial court's order denying a governmental entity's plea to the jurisdiction); Tex. Loc. Gov't Code Ann. §§ 271.151-160 ("Chapter 271,

2

Subchapter I," setting forth the requirements for adjudication of claims arising under written contracts with local governmental entities); Tex. R. App. P. 28.1(a) (providing rules for accelerated appeals). For the reasons explained below, we reverse the trial court's Order Denying BISD's Third Plea, render judgment granting BISD's Third Plea, and dismiss Appellees' lawsuit for lack of subject-matter jurisdiction.

## PERTINENT BACKGROUND

In *BISD I*, we included the case's full procedural history regarding the trial court's denial of BISD's Original and Renewed Pleas, so we focus our background on facts pertinent to BISD's Third Plea. *See BISD I*, 2023 WL 3521936, at **1-5. After BISD sustained damage from Hurricane Harvey in 2017, the Board held an Emergency Meeting/Agenda of the Board of Managers of BISD on September 8, 2017, to consider a "Resolution Regarding Immediate Needs Associated with Hurricane Harvey and Recovery[,]" and a "Resolution Granting Authority Superintendent To Enter Into Contracts For Replacement Or Repair Of Equipment Or School Facilities Including the Purchase Of Emergency Vehicles Damaged By Hurricane Harvey . . . ."

The Board passed a Resolution that stated: there was a need for the acquisition of goods and services to meet BISD's needs to repair damages to its facility and that its policies "CH (LOCAL) and CV (LOCAL) authorize the Superintendent or

3

designee to approve the expenditure of up to $50,000 in the event of unanticipated emergency requiring the commitment of unbudgeted financial resources for good and services[.]" The Board resolved that it was currently in a state of emergency and that the "Superintendent or designee may approve purchases to remediate, restore and secure the facilities of the District and that the $50,000 limit to these purchases . . . are waived under further action of the Board . . . [.]" The Board resolved that after "purchases of the type above are made, a purchase order should be issued after the fact as soon as practicable and the Board . . . will be notified of such purchases . . . [.]" The Board also passed the Resolution granting the Superintendent authority to enter into contracts for the replacement or repair of equipment or school facilities, including purchasing emergency vehicles damaged by Hurricane Harvey.

On October 26, 2017, Frossard, as an Authorized Agent of BISD, signed the Contract with Appellees, who were to "represent and assist [BISD] in the process of investigating, filing, negotiating and adjustment of all applicable claims for loss or damage . . . as a direct result of Hurricane Harvey[]" solely to BISD's Central Medical Magnate High School ("Central"). Appellee's compensation under the Contract, which states it is a service contract, was calculated on a contingency basis and was to be paid "only if, when and to the extent [BISD] recovers funds from Insurers[.]" The services provided under the Contract "are to assess damaged properties, estimate costs of repairs and present claims on [BISD's] behalf[,]" and

4

exclude participating "directly or indirectly in the reconstruction, repair, or restoration of damaged property[.]"

On June 19, 2018, BISD's counsel sent Appellees a letter giving formal notice of BISD's Termination of the Contract and stating the termination "includes, but is not limited to, LRG's substandard performance in its adjusting responsibilities under the contract . . . ." BISD's Termination Letter stated it had retained LRG to identify available coverage for damages at Central and incurred over $1,000,000 in expenses and emergency repairs based on LRG's advice that there was ample coverage to expedite remediation and repairs. BISD stated that it was forced to close Central after its insurers later advised that it had "very limited coverage" which was not "remotely sufficient" to cover its incurred expenses and needed repairs. BISD informed Appellees that its letter was not an "exhaustive explanation of all bases for terminating the agreement, and it is not a limitation of the remedies BISD may pursue against LRG[,]" which included claims for breach of contract, professional negligence, and violations of the Deceptive Trade Practices Act and Insurance Code.

Appellees sent BISD a Formal Notice, Presentment and Demand seeking to recover amounts allegedly owed under the Contract. Appellees filed suit against BISD for breach of the Contract and alleged they suffered actual damages. BISD filed an Answer and Affirmative Defenses, asserting a general denial, governmental immunity, and material breach by Appellees. BISD filed its Original and Renewed

5

Pleas raising separate grounds challenging the trial court's subject matter jurisdiction. The trial court denied BISD's Original Plea, and its Renewed Plea was overruled by operation of law. *See id.* at 5, 11.

In Appellees' Fifth Amended Petition, the live pleading at the time BISD filed its Third Plea, Appellees alleged breach of contract damages in excess of $400,000. In its Third Plea, BISD argued there was no waiver of immunity for Appellees' breach of contract claim because the Contract was not "properly executed" under section 271.152 because (1) the Board's Meeting Minutes and Agendas from 2017 to 2023 show the Board never approved the Contract in a duly noticed public meeting, and (2) the Board did not delegate Frossard authority to enter the Contract on BISD's behalf. BISD attached evidence to its Third Plea, including, among other items: the Contract; BISD's Board Meeting Agenda and Minutes from 2017 to 2023; and BISD's Resolution.

Appellees filed a Sixth Amended Petition, alleging that BISD executed the Contract with either the Board's approval or the through the Board's delegation or ratification. Appellees alleged that their breach of contract claim "falls squarely within section 271.152's waiver of immunity, and BISD is not immune from suit for breach of the contract." Appellees also filed a Response in Opposition to BISD's Third Plea. In their Response, Appellees argued that while BISD claims the Contract was not "'properly executed[]'" because Frossard lacked authority to execute the

6

Contract with Appellees, BISD filed a Petition in Intervention against LRG in another case filed in Jefferson County District Court in which BISD was a party. The record shows that in Cause Number B-203,080, *PAL Environmental Safety Corporation v. Beaumont Independent School District* ("the Jefferson County case"), BISD filed a Petition in Intervention against Harris for negligence, common-law fraud, and breach of contract, and both Harris and BISD filed an Agreed Notice of Non-Suit in that case because the parties no longer wished to pursue their causes of action in Jefferson County. In its Petition in Intervention, BISD asserted that it had a contract with Harris, who breached the contract, and that it was entitled to actual damages.

In their Response, Appellees requested that the trial court take judicial notice of the pleadings and documents filed in the Jefferson County case. Appellees argued there was sufficient evidence to demonstrate genuine issues of fact on the questions of whether (1) the Board delegated authority to Frossard to execute the Contract; (2) BISD separately or independently approved the Contract; and (3) BISD ratified the Contract through its post-contract conduct.

BISD filed a Reply to Appellees' Response to its Third Plea and argued that the Board did not delegate authority to Frossard to execute the Contract and no fact issues exist as to whether the Board approved or ratified the Contract. BISD argued

7

that Chapter 271 is the sole means by which a breach of contract claim may be brought against a local governmental entity.

After conducting a hearing and taking the matter under advisement, the trial court denied BISD's Third Plea without stating its reason.

## ANALYSIS

BISD argues the trial court erred in denying its Third Plea because Appellees failed to show the Contract was "properly executed" on BISD's behalf as required to waive its governmental immunity under Chapter 271 of the Texas Local Government Code. *See* Tex. Loc. Gov't Code Ann. § 271.151(2)(A). According to BISD, the Board neither approved the Contract nor authorized Frossard to execute the Contract on its behalf. Appellees argue the trial court correctly denied BISD's Third Plea because the jurisdictional evidence shows, or raises fact issues, that (1) the Contract did not require the Board's approval because the Contract falls within the scope of Frossard's emergency powers under BISD's policies; (2) the Board approved or ratified the Contract by its conduct; or (3) BISD waived or abrogated governmental immunity.

### Standard of Review

A plaintiff has the burden to affirmatively demonstrate the trial court's jurisdiction, which includes the burden to establish a waiver of governmental immunity. *See Town of Shady Shores*, 590 S.W.3d 544, 550 (Tex. 2019). The

existence of subject-matter jurisdiction is a question of law that can be challenged by a plea to the jurisdiction. *Klumb v. Hous. Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 8 (Tex. 2015); *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). We review a trial court's ruling on a plea to the jurisdiction under a de novo standard of review. *See Miranda*, 133 S.W.3d at 226, 228; *Woodway Drive LLC v. Harris Cnty. Appraisal Dist.*, 311 S.W.3d 649, 651 (Tex. App.—Houston [14th Dist.] 2010, no pet.), *superseded by statute on other grounds as stated in Town & Country, L.C. v. Harris Cnty. Appraisal Dist.*, 461 S.W.3d 208, 212 (Tex. App.—Houston [1st Dist.] 2015, no pet.). The trial court's review of a plea to the jurisdiction "generally mirrors the summary judgment standard." *Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019) (citing *Sampson v. Univ. of Tex.*, 500 S.W.3d 380, 384 (Tex. 2016)).

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues. *See Miranda*, 133 S.W.3d at 227. The movant must meet the summary-judgment standard of proof by conclusively demonstrating that the trial court lacks subject matter jurisdiction. *See id.* at 227-28. We credit as true all evidence favoring the nonmovant and draw all reasonable inferences and resolve any doubts in the nonmovant's favor. *Id.* at 228. If the evidence creates a fact question

9

regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. *Id.* at 227-28. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

"If the Legislature elects to waive immunity by statute, it must do so by clear and unambiguous language." *Chambers-Liberty Cntys. Navigation Dist.*, 575 S.W.3d at 344 (citing Tex. Gov't Code Ann. § 311.034; *Tooke v. City of Mexia*, 197 S.W.3d 325, 332-33 (Tex. 2006)). Matters of statutory construction are questions of law that we review under a de novo standard of review. *See In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 700 (Tex. 2015); *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007); *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989). Statutory waivers of immunity are to be construed narrowly. *See Tex. Adjutant Gen.'s Off. v. Ngakoue*, 408 S.W.3d 350, 353 (Tex. 2013) (citing Tex. Gov't Code Ann. § 311.034). When construing a statute that purportedly waives immunity, we generally engage in a heavy presumption in favor of immunity and resolve ambiguities in favor of retaining immunity. *See Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 844 (Tex. 2009) (citing

10

*Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003)); *Gay v. City of Wichita Falls*, 457 S.W.3d 499, 504 (Tex. App.—El Paso 2014, no pet.) ("There is a 'heavy presumption' in favor of immunity.") (quoting *City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007)).

Governmental Immunity

Governmental units, including school districts, are immune from suit unless the State consents and waives immunity. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018) (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012); *Miranda*, 133 S.W.3d at 224). Under Chapter 271, Subchapter I, the Legislature has expressly waived governmental immunity for certain contracts with a governmental entity. Tex. Loc. Gov't Code Ann. § 271.152. A public school district is a governmental entity under the statute. *See* Tex. Loc. Gov't Code Ann. § 271.151(3)(B); *see also El Paso Educ. Initiative, Inc. v. Amex Props., LLC*, 602 S.W.3d 521, 526 (Tex. 2020) ("Public school districts are generally entitled to governmental immunity from liability and suit."). Section 271.152, which provides the only waiver of immunity applicable to Appellees' breach of contract claim states:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

11

Tex. Loc. Gov't Code Ann. § 271.152. A "[c]ontract subject to this subchapter" is "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity[.]" *See* Tex. Loc. Gov't Code Ann. § 271.151(2)(A); *see also City of Hous. v. Williams*, 353 S.W.3d 128, 135 (Tex. 2011); *ICI Constr., Inc. v. Orangefield Indep. Sch. Dist.*, 339 S.W.3d 235, 239-40 (Tex. App.—Beaumont 2011, no pet.). Section 271.151 does not define "properly executed," but the Texas Supreme Court has explained that "a contract is *properly* executed when it is executed in accord with the statutes and regulations prescribing that authority." *El Paso Educ. Initiative*, 602 S.W.3d at 532; *see also BISD I*, 2023 WL 3521936, at **6, 9.

"[J]ust as a government official cannot bind the government to a contract based on apparent authority, an agent acting on behalf of a [governmental unit] cannot bind it in a way that exceeds its statutory grant of authority to enter into contracts." *El Paso Educ. Initiative*, 602 S.W.3d at 533 (citing *State ex rel. Dep't of Crim. Just. v. VitaPro Foods, Inc.*, 8 S.W.3d 316, 322 (Tex. 1999) ("Only persons having actual authority to act on behalf of the State can bind the State in contract.")). Thus, a contract is "properly executed" only "when it is executed in accord with the statutes and regulations prescribing that authority." *Id.* at 532 (noting that "proper" means "[a]ppropriate, suitable, right, fit, or correct; *according to the rules*"). Under

12

the education code, the board of trustees of an independent school district may "enter into contracts as authorized under this code or other law and delegate contractual authority to the superintendent as appropriate." Tex. Educ. Code Ann. § 11.1511(c)(4);[1] *see Edcouch-Elsa Indep. Sch. Dist. v. Comprehensive Training Center, LLC*, No. 13-23-00108-CV, 2024 WL 3708934, at *3 (Tex. App.—Corpus Christi Aug. 8, 2024, pet. filed) (mem. op.).

### Did the Board Approve the Contract or Delegate Frossard Authority to Execute the Contract on BISD's Behalf?

The Board's "final action, decision, or vote" may only be made in a duly noticed open meeting. Tex. Gov't Code Ann. § 551.102; *see Davis v. Duncanville Indep. Sch. Dist.*, 701 S.W.2d 15, 17 (Tex. App.—Dallas 1985, writ dism'd w.o.j.) (stating a political subdivision of the state, including governing bodies of school districts, "may act only as a body corporate at a properly called meeting[]"). The Board is required to keep minutes or make a recording of each of its open meetings and those minutes must indicate "each vote, order, decision, or other action taken." Tex. Gov't Code Ann. § 551.021. If the Board approved the Contract, evidence of that approval would be reflected in the minutes of the Board's meetings. *See Le Villa*

---

[1] We cite to the current version of the statute as the subsequent amendment does not affect the outcome of this appeal.

*Indep. Sch. Dist. v. Gomez Garza Design, Inc.*, 79 S.W.3d 217, 220-21 (Tex. App.—Corpus Christi 2002, pet. denied).

In support of its Third Plea, BISD attached the Board's Meeting Agendas and Minutes from September 2017 to 2023, the Affidavit of Cheryl Hernandez ("Hernandez"), and the Affidavit of Georgia Antoine ("Antoine"). In Hernandez's affidavit, she explained that as part of her duties as BISD's Chief Financial Officer, she regularly attends the Board's meetings and places items to be approved on the Board's agendas. Hernandez stated from August 2017 to October 2023, the Contract was not presented to the Board, and the Board did not vote to authorize any contract with Harris and LRG. Hernandez also stated that the Board did not take any action authorizing Frossard to enter into any contract with Harris and LRG. In Antoine's affidavit, she explained she was BISD's Coordinator for Board Affairs and Elections, and that she had reviewed the Board's meeting agendas and minutes from September 2017 to October 2023 and found no record that BISD was presented with or approved any contract with Harris and LRG. Antoine also stated the Board did not delegate Frossard authority to enter into any contract with Harris and LRG.

The parties did not include any record citations of evidence showing the Board approved the Contract or specifically delegated Frossard authority to execute the Contract during an open meeting, and we are not aware of any. Based on this record,

14

we hold the Board never approved the Contract or specifically delegated Frossard authority to execute the Contract on BISD's behalf.

<u>Did The Contract Not Require Board Approval?</u>

Appellees argue the Contract did not require the Board's approval because it falls within the scope of Frossard's emergency powers under BISD's existing policies, which authorized Frossard "to approve the expenditure of up to $50,000 in the event of an unanticipated emergency requiring the commitment of unbudgeted financial resources for goods and services[.]" *See* Tex. Educ. Code Ann. § 11.1511(c)(4). Appellees argue the Contract did not exceed the $50,000 cap because Frossard did not spend any unbudgeted funds upfront due to the Contract being contingent upon BISD obtaining insurance payments. Appellees assert that any indeterminate payment under the Contract could have been less than $50,000 and would not have been paid using school tax revenue.

"[P]ersons or entities contracting with governmental units are charged by law with notice of the limits of the authority of the governmental unit and are bound at their peril to ascertain if the contemplated contract is properly authorized.'" *Base-Seal, Inc. v. Jefferson Cnty.*, 901 S.W.2d 783, 788 (Tex. App.—Beaumont 1995, writ denied). Appellees were charged by law with notice that under BISD's existing policies, Frossard's delegated contractual authority included approving an "expenditure of up to $50,000 in the event of an unanticipated emergency requiring

15

the commitment of unbudgeted financial resources for goods and services[.]" For Frossard to have "properly executed" the Contract on BISD's behalf, the Contract must fall within his delegated contractual authority. *See* Tex. Educ. Code Ann. § 11.1511(c)(4); *El Paso Educ. Initiative*, 602 S.W.3d at 531-33; *Edcouch-Elsa Indep. Sch. Dist.*, 2024 WL 3708934, at *3.

We disagree that BISD's policy specifically delegating to Frossard the authority to expend up to $50,000 for repair and remediation services can be interpreted as delegating to Frossard the authority to enter into a contingent fee contract, as Appellees allege, that has caused them damages in excess of $400,000– an amount well in excess of $50,000. Importantly, subject to established legislative limits, BISD must be the ultimate interpreter of its policies, not Appellees. *See Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 565 (Tex. 2000); *Robstown Indep. Sch. Dist. v. Alejandro*, No. 13-23-00406-CV, 2025 WL 555767, at *6 n.7 (Tex. App.—Corpus Christi Feb. 20, 2025, no pet.) (mem. op.); *see also* Tex. Educ. Code Ann. § 11.151(b) (providing board has the exclusive power and duty to govern and oversee the district's management).

Appellees alternatively argue that the Contract did not need Board approval because the Resolution authorized Frossard to approve "purchases to remediate, restore, and secure" BISD's facilities and waived the $50,000 limit to those purchases established by BISD's policies. According to Appellees, because the

16

Resolution stated that "it was 'necessary . . . to address damage and begin remediation immediately;'" the Resolution can be "holistically read" to have also delegated to Frossard the power to approve a purchase for "damage assessment" to BISD's facilities regardless of whether the service would directly "remediate, restore, and secure" BISD's facilities.

The Resolution specifically delegated to Frossard the authority to "approve purchases to remediate, restore, and secure the facilities of the District[,]" and provided that after "purchases of the type referenced above are made, a purchase order should be issued after the fact as soon as practicable and the Board . . . will be notified of such purchases . . . [.]" The Resolution also delegated to Frossard the authority to enter into contracts for the replacement or repair of equipment or school facilities, including purchasing emergency vehicles damaged by Hurricane Harvey. The unapproved LRG Contract called for Appellees to "represent and assist [BISD] in the process of investigating, filing, negotiating and adjustment of all applicable claims for loss or damage" that occurred at Central. The Contract specifically provides that Appellees "may not participate directly or indirectly in the reconstruction, repair, or restoration of the damaged property that is the subject of a claim adjusted by [Appellees.]" We note that this Court previously found that the Contract was for "adjusting insurance claims, and not for the replacement and repair of school equipment or facilities." *See BISD I*, 2023 WL 3521936, at *8.

17

The plain language of the Resolution does not support Appellees' assertion that Frossard had delegated authority to approve purchases regardless of whether they were "to remediate, restore, and secure" BISD's facilities. We hold that the Contract was for adjusting claims, and not for purchases to "remediate, restore, and secure the facilities of the District[.]" *See id.* Accordingly, the Resolution did not delegate to Frossard the authority to execute the Contract for adjusting claims. Since the Contract does not fall within Frossard's delegated authority, we conclude it was not "properly executed" on BISD's behalf. *See El Paso Educ. Initiative*, 602 S.W.3d at 533-34.

Did the Board Approve or Ratify the Contract

Appellees argue the Board approved or ratified the Contract by its conduct. Appellees contend that the Board knew about the Contract prior to its execution and that the Board's conduct supporting ratification includes:

- Harris provided BISD's Director of Maintenance, Cisco Abshire ("Abshire"), a sample contract to review.

- Abshire informed Harris that he answered the Board's questions about the Contract, and Abshire continued to share information with the Board after Frossard executed the Contract.

- BISD's counsel negotiated parts of the Contract.

- The Board terminated the Contract for non-performance and not for being invalid.

- BISD sued Harris for breaching the Contract.

18

As we have already explained, the Board can only make a "final action, decision, or vote" in a duly noticed open meeting. *See* Tex. Gov't Code Ann. § 551.102; *Davis*, 701 S.W.2d at 17. Since there is no evidence showing the Board ratified the Contract during an open meeting, we hold the Board never ratified the Contract. *See* Tex. Gov't Code Ann. § 551.021; *Le Villa Indep. Sch. Dist.*, 79 S.W.3d at 220-21.

Did BISD Waive Governmental Immunity by its Conduct?

Based on the same actions they used to support their ratification argument, Appellees also argue that BISD waived governmental immunity by its conduct. The Texas Supreme Court has rejected "the invitation to recognize a waiver-by-conduct exception in a breach-of contract suit against a governmental entity[,]" explaining that creating such an exception would force the State to expend resources to litigate the issue before enjoying sovereign immunity's protections. *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 414 (Tex. 2011) (citations omitted). In *Jefferson County v. Stines*, this Court recognized the Supreme Court's rejection of a waiver-by-conduct exception, and noted that "'at least one intermediate appellate court ha[d] concluded that a governmental entity may waive its immunity from suit by its conduct in "extraordinary factual circumstances.'" 523 S.W.3d 691, 724-25 (Tex. App.—Beaumont 2017, *rev'd in part and vacated in part on other grounds*, 550 S.W.3d 178 (2018) (citing *Tex. S. Univ. v. State St. Bank & Tr. Co.*,

19

212 S.W.3d 893, 908 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (finding wavier by conduct where university received approximately $13 million in equipment and services and then claimed contract was invalid and refused to pay). Additionally, in *City of Conroe v. TPProperty, LLC*, this Court again refused to recognize waiver by conduct and held that the facts in that case did not rise to the level of the extraordinary facts presented in *State Street Bank*. 480 S.W.3d 545, 565 (Tex. App.—Beaumont 2015, no pet.); *see also TGP Pub. Schs., Inc. v. Powell Law Grp.*, LLP, No. 03-22-00200-CV, 2024 WL 1333991, at *7 (Tex. App.—Austin Mar. 29, 2024, no pet.) (mem. op.) (refusing to recognize waiver by conduct). Based on our review of the record, the facts of this case do not merit waiver by conduct.

Did BISD Abrogate Governmental Immunity through Litigation?

Appellees argue BISD waived or abrogated governmental immunity by suing Harris for breaching the Contract and seeking damages under the Contract. According to Appellees, BISD acknowledged the Contract's validity in its Petition in Intervention filed against Harris in the Jefferson County case. At Appellees' request, we take judicial notice of the pleadings and documents filed in the Jefferson County case. *See* Tex. R. Evid. 201(b)(2).

In the Jefferson County case, PAL Environmental Safety Corporation, a remediation company, sued BISD, which then filed a Petition in Intervention suing Harris for breach of contract and seeking actual damages under the Contract that

20

Harris had with BISD. BISD and Harris jointly non-suited all their claims without prejudice because they no longer wished to pursue their causes of action in Jefferson County. The record shows that during an open meeting, BISD authorized its legal counsel to proceed with the Petition in Intervention against Harris.

While the judiciary has generally deferred to the Legislature to waive immunity because it is better suited to address conflicting policy issues, the Texas Supreme Court has recognized a variation on the waiver-by-conduct exception for cases in which the governmental entity voluntarily engages in certain litigation. *Reata v. Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 375-76 (Tex. 2006) (citation omitted) (holding that when City filed its affirmative claims for relief as an intervenor, the trial court acquired subject matter jurisdiction over claims made against the City which were connected to, germane to, and properly defensive to the matters on which the City based its claims for damages). The *Reata* Court explained that it recognizes that sovereign immunity is a common-law doctrine and that it is the judiciary's responsibility to define the boundaries of that common-law doctrine to determine whether a governmental entity's immunity from suit extends to a situation where the entity has filed suit asserting affirmative claims for monetary damages. *Id.* at 374-75. The *Reata* Court stated that "if the governmental entity interjects itself into or chooses to engage in litigation to assert affirmative claims for monetary damages, the entity will presumably have made a decision to expend

21

resources to pay litigation costs." *Id.* at 375. The *Reata* Court held that in such an instance, "it would be fundamentally unfair to allow a governmental entity to assert affirmative claims against a party while claiming it had immunity as to the party's claims against it." *Id.* at 375-76.

A governmental entity's claim seeking affirmative relief waives immunity from suit for any claim "'germane to, connected with, and properly defensive to the [governmental entity's] claims, to the extent [the private entity]'s claims offset those asserted by the [governmental entity].'" (citation omitted). *See La Joya Indep. Sch. Dist. v. Bio-Tech Sols., Inc.*, No. 13-07-00484-CV, 2009 WL 1089459, at **3-5 (Tex. App.—Corpus Christi Apr. 23, 2009, pet. denied) (mem. op.) (holding school district's counterclaim seeking affirmative relief constitutes a waiver of immunity); *see also Harris Cnty. Fresh Water Supply Dist. No. 61 v. Magellan Pipeline Co., L.P.*, 649 S.W.3d 630, 642-45 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) (holding District's participation in litigation by procuring its filing abrogated its right to claim immunity despite District not filing or intervening in the lawsuit). We hold that the cases applying the waiver-by-conduct exception in instances where the governmental entity voluntarily engaged in litigation are distinguishable from this case, because the governmental entities' actions seeking affirmative relief occurred within those cases. *See Reata*, 197 S.W.3d at 375-76; *La Joya Indep. Sch. Dist.*, 2009

22

WL 1089459, at **3-5; *Harris Cnty. Fresh Water Supply Dist. No. 61*, 649 S.W.3d at 642-45.

In this case, BISD did not seek affirmative relief under the Contract, and BISD only sought affirmative relief in the Jefferson County case, which did not include all the parties in this case. Additionally, the record shows BISD abandoned its Petition in Intervention in the Jefferson County case when it and Harris jointly non-suited all their claims without prejudice because they no longer wished to pursue their causes of action in Jefferson County. Accordingly, we hold that BISD did not seek affirmative relief in this case by intervening in the Jefferson County case and that its actions in the Jefferson County case did not waive or abrogate its right to claim governmental immunity in this case.

## CONCLUSION

We have determined that Appellees failed to show the Contract was "properly executed" on BISD's behalf, as required, in order to waive its governmental immunity under Chapter 271. *See* Tex. Loc. Gov't Code Ann. § 271.151(2)(A). We have also determined that BISD did not approve or ratify the Contract, delegate to Frossard the authority to execute the Contract on its behalf or waive or abrogate its right to claim governmental immunity. For those reasons, BISD established the trial court lacked jurisdiction as a matter of law. *See Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 771; *Miranda*, 133 S.W.3d at 228. Therefore, we conclude the trial

23

court erred by denying BISD's Third Plea and sustain BISD's issues. Accordingly, we reverse the trial court's Order Denying BISD's Third Plea, render judgment granting its Plea, and dismiss Appellees' lawsuit for lack of subject-matter jurisdiction.

REVERSED AND RENDERED.

JAY WRIGHT
Justice

Submitted on May 8, 2025
Opinion Delivered June 19, 2025

Before Johnson, Wright and Chambers, JJ.

24